CASE No. 851.

DIERCKS v. ROBERTS.

1. Where one endorses a note in blank under agreement with the maker that the blank shall be filled with a certain amount, and the maker fills it with a larger amount, and delivers it to the payee, who has no knowledge of such agreement, the endorser is liable to the payee for the note as written.

2. If a note on the face of it, purports to be an absolute engagement to pay money at a certain time, no parol evidence of an agreement at the time to renew and give indulgence will be admissible to defeat the action on the note.

3. *Rugely* v. *Davidson*, 2 *Mill's Const. R.* 33, limited.

4. Whether the holder of a note has used due diligence to discover the endorser's place of residence, is a question of fact for the jury; but it is error to submit to them the inquiry whether due diligence had been used in giving to the endorser notice of the dishonor of his note.

Before THOMSON, J., Richland, March, 1879.

Action by G. Diercks against W. T. Roberts. Verdict for plaintiff. The facts are fully stated in the opinion of the court.

*Mr. John Bauskett*, for appellant.

*Mr. W. S. Monteith*, contra.

April 9th, 1880. The opinion of the court was delivered by

McIVER, A. J. This action was brought against the defendant as endorser of a promissory note for $250, made by one Francis Hammond, June 19th, 1878, payable sixty days after date, and protested for non-payment on August 21st, 1878.

The defence interposed was based upon three grounds: 1. That the note was in blank when it was endorsed by the defendant, and that it was agreed at the time, between defendant and Hammond, that it should be filled up for $100, and that the plaintiff had notice of such agreement. 2. That it was also agreed at the time of the endorsement, that three notes should be executed and used as renewals of each other, so as to make the amount fall due "when the cotton crop should come in." 3. That due notice of the dishonor of the note had not been given, so as to charge defendant as endorser. The exceptions to the judge's charge were designed, doubtless, to raise three questions: 1. Whether the fact that the amount secured by the note was in blank at the time of the endorsement could affect the question of the defendant's liability. 2. Whether the parol agreement, made at the time the notes were endorsed, that the notes should be renewed was a good defence to the action. 3. Whether the

Circuit judge erred in charging the jury " that the main question in the case was, whether due diligence had been used in giving notice of the dishonor of said note to the defendant, Roberts, and that he would leave this question of ' due diligence ' to them to determine."

As to the first question, we do not see how it can arise under the evidence adduced in this cause ; for there is no evidence whatever tending to show that there was any understanding *between the plaintiff and the defendant* that the amount to be inserted in the note should be limited to $100, but, on the contrary, the plaintiff distinctly testifies that the note was filled up for $250 before the endorsement was made ; and although the defendant in his answer, *which is not evidence,* does say that he endorsed the note in blank, with the understanding that the amount to be inserted was $100, and that the plaintiff had notice of such understanding, yet, in his testimony, *which is evidence,* he only says that such was the agreement between him and Hammond, and does not even intimate that the plaintiff was a party to or had notice of any such agreement. It is clear, therefore, without entering upon the hypothetical inquiry as to what would have been the legal effect of such testimony, if it had been adduced, that there was no error on this point ; for, certainly, no private understanding between the defendant and Hammond, not brought to the notice of the plaintiff before he took the note, could affect the question of the defendant's liability.

The next inquiry is as to the effect of the parol agreement, made at the time of the endorsement of the note, that it should be renewed from time to time. The proposition that where a person signs or endorses a note payable at a particular day, or, what amounts to the same thing, where he signs or endorses a note in blank, which is afterwards filled up by being made payable at a particular day, (*Carson* v. *Hill & Jones,* 1 *McM.* 76 ; *Aiken* v. *Cathcart,* 3 *Rich.* 133,) parol evidence can be admitted to show that the agreement was that it should not in fact be payable on such day, but should be renewed, cannot be sustained. We take the rule to be as stated in Chitty on Bills, ch. II., p. 61 : " If the instrument, on the face of it, purport to be an absolute engagement to pay money at a certain time, no parol evidence of

an agreement at the time to renew and give indulgence will be admissible to defeat the action on the bill or note." To same effect see *Phillips on Evidence*, 433. As is said by Lord Ellenborough, in *Hoare* v. *Graham*, 3 *Camp.* 57 : " The condition for a renewal entirely contradicts the instrument which the defendants have signed ; such an arrangement rests in confidence and honor only and is not an obligation of law. There may, after a bill is drawn, be a binding promise, for a valuable consideration, to renew it when due, but if the promise is cotemporaneous with the drawing of the bill, the law will not enforce it. This would be incorporating with a written contract an incongruous parol condition which is contrary to first principles." See also *Free* v. *Hawkins*, 8 *Taunt.* 92, (4 *E. C. L. R.* 31 ;) *Thompson* v. *Ketchum*, 8 *Johns.* 146. It is very true that some of the remarks made by Gantt, J., in delivering the opinion of the court in the case of *Rugely* v. *Davidson*, 2 *Mill's Const. R.* 33, are well calculated to convey the impression that the parol evidence adduced in this case should have the effect claimed for it. In that case one of the grounds of defence was, that at the time the note was endorsed it was verbally agreed that the endorsee would " sue the drawer and proceed against him to insolvency, before he was to have recourse to the endorser ; and that, in the event of the drawer's insolvency, that the endorsee should not call upon the endorser for payment until the expiration of three years next succeeding the proof of insolvency." At the trial below the testimony as to this parol agreement was withdrawn from the jury as incompetent, and it was upon that ground that a new trial was granted. It must be observed, however, that in the first place that case was an action against the endorsee of a note *past due*, and in such a case the question whether due diligence has been observed in making the demand and giving the notice of non-payment is a question for the jury, whereas, in a case where the action is against the endorser of a note *before maturity*, the rule is otherwise, and the question of diligence (all the circumstances necessary for giving the notice being known) is one of law for the court. *Gray* v. *Bell*, 2 *Rich.* 67. Hence the court might very well have held, in the case of Rugely v. Davidson, that where the parties have, by their own agreement,

determined the degree of diligence which should be required to fix the liability of the endorser, the evidence of such agreement ought to be allowed to go to the jury, in an action on a note endorsed after due, whether the question of diligence is for the jury. A careful examination of that case will, however, reveal the fact that the decision could only be regarded as the law of that particular case, for it was, in fact, decided by an equally divided court, although nominally by a vote of three to two, for as the law then stood, the judge who heard the case on Circuit not being allowed to participate in the determination of the case in the Court of Appeals, the voice of Cheves, J., one of the three dissenting judges, who had heard the case on Circuit, could have no weight in the decision of that particular case. It furthermore appears that Nott, J., one of the majority, who delivered a separate opinion, did not concur in so much of the opinion of the court, as presented by Gantt, J., as seemed to recognize the idea that the agreement to indulge the endorser for three years after the making of the note had been pursued to insolvency constituted a defence to the action, for he expressly held that portion of the agreement to be incompetent, as going to control the legal effect of the endorsement, and limited his concurrence to the proposition that parol evidence was admissible to show that the parties had, by their own agreement, fixed upon what should be due diligence in making demand upon the maker of the note. The case does not seem to have been recognized in the subsequent cases of *Eccles* v. *Ballard*, 2 *McC.* 388 and *Brock* v. *Thompson*, 1 *Bail.* 322, but only to the extent allowed by the opinion of Nott, J., that such evidence may be adduced to show what degree of diligence in making demand of the maker of a note should be sufficient, under the agreement of the parties, to charge the endorser of a note transferred after maturity, and not to the extent of allowing such evidence to be received for the purpose of extending the time fixed for payment of such note.

The next inquiry is as to the propriety of the charge upon the question of diligence. The evidence was that the endorser was a resident of Richland county, and that Columbia was and had been his post office for the past thirty years, and that Eastover

was not his post office, he never having received a letter from that office in his life. The notary testified "that he protested said note on August 21st, 1878, and mailed a notice to W. T. Roberts, at Eastover. That he did not inquire as to the post office of W. T. Roberts, but believed that Capt. J. H. Sawyer told him the post office was Eastover."

It also appeared from the plaintiff's testimony that he sent a notice of protest by private hand to the defendant some time in September, 1878, and the defendant testified that he never received any notice of the dishonor of the note until September 12th, 1878, when he received a note from the plaintiff notifying him of the fact. In this case the question of diligence involved two inquiries—one of fact and the other of law. Whether due diligence was used in ascertaining the post office of the defendant, was a question of fact for the jury, but when the fact of residence was ascertained, or when due diligence had been employed in endeavoring to ascertain such fact, the question of diligence in giving the notice is a question of law, upon which it was the duty of the court to have instructed the jury. *Thompson* v. *Bank,* 3 *Hill* 82–3; *Central Bank* v. *Adams,* 11 *S. C.* 452; *Bateman* v. *Joseph,* 12 *East* 433. As is said in the last-named case: "Whether due notice has been given of the dishonor of a bill, all the circumstances necessary for the giving of such notice being known, is a question of law; but whether the holder has used due diligence to discover the place of residence of the person to whom the notice is to be given, is a question of fact for the jury." In this case the whole question of diligence was left to the jury, and it may be that they concluded that the notice sent on September 12th, 1878, was sufficient to charge the endorser. Be that as it may, however, it was error to refer to the jury the question "whether due diligence had been used in giving notice of the dishonor of said note to the defendant Roberts."

The judgment of the Circuit Court is set aside and a new trial is ordered.

WILLARD, C. J., and McGOWAN, A. J., concurred.