### D. P. LAGRONE v. TIMMERMAN.

### J. H. LAGRONE v. SAME.

1. CORPORATION—ESTOPPEL.— A party taking insurance in a supposed mutual corporation, under the mistaken representations of the supposed officers that it was a mutual corporation, is not estopped from denying the legal existence of such corporation.

2. CHARGE.—It is not error in a Circuit Judge to fail to instruct the jury upon a point not called to his attention by a request for that purpose.

3. AGENT—CONTRACT.—If an agent make a contract which he has no authority to make, he is individually liable for such damages as flow from the act, although he does not use falsehood or deceit.

4. CORPORATION.—A corporation can have no powers except such as are conferred by its charter, either in express terms or by implication, and unless expressly given in its charter, a corporation has no right to form another corporation. *Query:* Has the legislature the right to delegate such power to a corporation?

5. IBID.—A mutual corporation having no legal existence, can have no members.

6. EVIDENCE—CONTRACT.—Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.

7. CONSTRUCTIVE FRAUD is such as the law infers from the relationship of the parties and from the circumstances by which they are surrounded, and from the negligent performance of some act, or the negligent omission to do something whereby another has been deceived to his prejudice.

8. AN EXCEPTION which does not set forth the request to charge referred to, or the modification complained of, will not be considered.

9. JURY—CASE FOLLOWED.—It is not error in a Circuit Judge to permit a jury to again take under consideration a case after they had once dispersed, thinking they had agreed to a sealed verdict. Following *Devereux* v. *Champion Cotton Press Co.*, 14 S. C., 396.

10. EVIDENCE—CORPORATION.—In this case the by-laws of the Chester association were irrelevant; but if relevant, the construction given the twentieth by-law of that association by the Circuit Judge was the proper one.

Before EARLE, J., Edgefield, March term, 1895. Affirmed.

The following is the charge of the Circuit Judge in the case of D. P. Lagrone against W. H. Timmerman, J. S. C. Carpenter, and J. W. Hardy:

Mr. Foreman and gentlemen of the jury: After listening attentively to learned and eloquent arguments of counsel, it becomes our duty now to decide this case. It is my duty to give you the law, and it is your duty to pass upon the facts. The issues which are to be decided are presented by the pleadings. When the plaintiff comes into court he formulates, in a written paper called his complaint, a statement showing his cause of action, and containing a prayer for the relief to which he is entitled, and the defendant on his part files his answer, containing such statement of facts which he sets up, and by which he attempts to show that the plaintiff is not entitled to the relief prayed for in his complaint. So now we will ascertain the issue from the pleadings.

The plaintiff alleges, that on or about the third day of October, 1893, the defendant, J. W. Hardy, representing himself as the soliciting agent of a corporation styled as the Farmers' Mutual Fire Insurance Association for the County of Edgefield, induced the plaintiff to take out an

insurance policy in said alleged corporation, covering the
plaintiff's gin house and machinery, for the sum of $500,
against loss by fire, which, by the terms of said pretended
policy, was issued from said date until the said policy should
be cancelled by the plaintiff or by the said pretended asso-
siation; the plaintiff then paying a premium of $2.50 for
said policy of insurance, and being by the terms thereof
subject to future assessments for expenses and losses in-
curred by said company, it being represented that said as-
sociation was a mutual fire insurance company; and the
plaintiff further alleges that the defendants caused to be
issued to him said policy of insurance, wherein the defend-
ant, W. H. Timmerman, signed, styling himself president,
and the defendant, J. S. C. Carpenter, signed, styling him-
self as general agent of said company, and the defendant,
J. W. Hardy, representing himself as the soliciting agent
of the said company; that said policy of insurance is upon
a printed form, and had the appearance of being genuine;
and under the representation aforesaid and the circumstances
of its issuance, the plaintiff was deceived, and made to be-
lieve that said pretended insurance company was in fact a
corporation of this State, &c. And, second, that on or
about the      day of      the plaintiff's said gin house and
machinery were accidentally destroyed by fire, thereby caus-
ing him a loss of $800.    That thereupon the plaintiff pro-
ceeded to take such steps as were necessary to collect the
amount stated to be due by said policy of insurance, and
he then learned, for the first time, that there was no such
corporation, and said defendants were well aware of said
fact at the time of the issuing of said policy of insurance;
and the plaintiff further charges that the said policy of in-
surance, for the reason above given, is false, pretensive, and
fictitious, and gave the plaintiff no protection whatever
against loss by fire on his said gin house and machinery, as
he was led to believe; and the plaintiff further charges that
the defendants were grossly negligent in placing such false,
pretensive contract of insurance upon the plaintiff, and

their conduct of action in that behalf has operated as a fraud upon plaintiff, and has thereby caused him loss and damages to the amount of $500, for which the plaintiff alleges the defendants were liable to him, and they should pay the same. Now, that is the cause of action stated in the complaint by the plaintiff.

The defendants came into court, and, in the first place, they deny generally and specifically each and every allegation of the plaintiff's complaint, except as are hereinafter specifically admitted. And as a further defence they say: "That under and by virtue of an act of the General Assembly of this State, approved December 18th, 1891, and entitled 'An act to incorporate the Farmers' Mutual Insurance Association of Chester, S. C., J. S. C. Carpenter, R. T. Mockbee, W. O. Guy, O. Barber, and all other persons who shall become members thereof, were constituted a body politic and corporate, under the name of the Farmers' Mutual Insurance Association of Chester, S. C., and under that name shall have all the powers, privileges, and franchises incident to such corporations under the laws of this State.' "

The answer goes on to set out the sections of that act, and then proceeds to allege: "Under and by virtue of the power and authority conferred by said act of the General Assembly of said State, and the by-laws of said corporation hereinbefore set forth, J. S. C. Carpenter, the general agent of said corporation, proceeded to organize and did organize a subordinate or branch organization of the said the Farmers' Mutual Insurance Association of Chester, S. C., for the county of Edgefield, and the defendant, W. H. Timmerman, was chosen president, and J. S. C. Carpenter was chosen general agent of said organization. That thereafter the said Edgefield branch of the said the Farmers' Mutual Insurance Association of Chester, S. C., issued policies of insurance to its members, paid all valid losses accruing thereunder, and in all other respects transacted the business of a regular insurance company, at all times complying with the terms of the said act of General Assembly creating the said corpo-

ration, and the by-laws of the same passed in pursuance thereof, to all of which reference is craved as often as to the court may seem meet, necessary or advisable. That on or about the 3d day of October, 1893, a policy of insurance was issued to the plaintiff in the said the Farmers' Mutual Insurance Association of Chester, S. C., by the said subordinate organization for the county of Edgefield, covering plaintiff's gin house and machinery, &c."

Gentlemen of the jury, I charge you that a corporation is an artificial person, a creature of statute. The legislature has the power to grant to certain persons certain rights, privileges, and immunities as members of a corporate body, to be known by a corporate name, as, for instance, they chartered the Farmers' Mutual Insurance Association, or Company, of Chester, S. C., to which this answer refers. I charge you, gentlemen, that a corporation so created has only such powers as are expressly granted under its charter, or such powers as arise by necessary implication, and that under this act of the legislature to which this answer refers, the Chester company would have had no power to organize to create the Farmers' Mutual Association of Edgefield, S. C. Indeed, it is very doubtful whether the legislature—if the act in terms had given that power—whether the legislature would have had the power itself to have granted it. The Chester company has no power to create the company referred to in these pleadings as the Farmers' Mutual Fire Insurance Company of Edgefield—the Farmers' Mutual Fire Insurance Association of South Carolina, herein designated as the Farmers' Mutual Fire Insurance Association of the county of Edgefield. So that, so far now as the issue attempted to be raised by the answer that this was a policy issued by the Farmers' Mutual Fire Insurance Association of Edgefield, S. C., the same having been created by the Chester company, you may dismiss that, it cannot affect this cause—it is not a corporation. If it had not been for the answer, then, in my judgment, there was not sufficient proof to show that there was

any representation that this was a corporation, because I could not hold that in all cases the name imports corporation; it is perfectly competent for an unincorporated association to adopt its name; it is perfectly competent for such association to elect officers; they are somewhat like copartnerships—very similar to a partnership, when there is no charter; but the answer comes in and supplies what the plaintiff omitted to prove. The answer says that they did issue the policy to the plaintiff, and they did issue the policy as a corporation, and they point for their authority to this act of legislature by which the Chester company was incorporated. In that they made a mistake. No such power was given to them under the act of the legislature.

Very well, the plaintiff comes into court and says, that these defendants here undertook to insure for a valuable consideration his gin house, representing, pretending that the policy was issued by an incorporation. And that is the issue clearly drawn. Did the defendants so represent? If they did, if they issued the policy as a corporation, or as agent of a corporation, when they were not, and if the plaintiff, not knowing that they had no such authority, believing that they had, took out this policy, paid his money for it, and was misled by the defendants, and has suffered loss as a proximate result, then the defendants are liable. Now, a great deal has been said to you about fraud, and I have a number of requests to charge as to fraud. In order to bring your mind clearly to the subject, let me tell you something about fraud. Actual fraud is any cunning deception, or artifice used to circumvent, cheat, or deceive another. Now bear in mind what actual fraud is. Constructive fraud is such as the law infers from relationship of the parties and the circumstances by which they are surrounded, or from the negligent performance of some act, or the negligent omission to do something, whereby another has been deceived or misled to his personal prejudice. In regard to constructive fraud, I charge you that this kind of fraud may exist regardless of any actual dishonesty or evil

design. I will say something more to you upon that subject when I get to the requests to charge which have been handed to me.

Now, gentlemen of the jury, did these gentlemen here, the defendants in this case, represent that they were agents of a corporation? In regard to agency, I charge you that where one acts, although he may be an agent without disclosing his principal, that he is liable individually. Suppose, for instance, here is an agent who has a principal, and he makes a contract with you, Mr. Foreman, without telling you who his principal is, and you treat with him as an individual, representing no one but himself, then he is liable to you, notwithstanding the fact that he is agent for another. The agent is bound to disclose his principal, and where one acts as agent for another, representing that he is agent for another, and it turns out that he is not such agent, he is liable. Suppose a man comes to you, Mr. Foreman, and says to you, I want to make a certain contract with you, I am acting as agent in such a concern, and you treat with him, you make a contract with him, it turns out he was not agent of that concern, then you cannot proceed against the principal, because there is no principal; he then becomes liable personally; and that is true, although he may have supposed at the time and honestly believed that he had authority; if it turns out he had no authority, if it turns out that he was not authorized, that he was not agent in fact, although he may have believed he was agent, yet he could be liable under the contract he made.

Very well, then; did these gentlemen represent that they were agents of a corporation? If they did, and there is no corporation, then you will observe that they must be liable individually, because their representation has been shown— if that's a fact that there was no corporation—to have been false. Now, they may have honestly believed that, and I cannot charge you that in every case of fraud that moral turpitude is involved, unless you take a very refined idea as to what honesty means, because there are many cases where

there is fraud in law, as it is called, where the court says
that there was no moral turpitude; many cases in our own
State where the court has pronounced a certain act to have
been fraudulent, and have qualified it by saying this was
fraud in law, and does not involve moral turpitude.

Here is the contract, however, that was entered into by
the plaintiff and the defendants; whatever that contract re-
quires the plaintiff to do, he is bound to do, although it may
not have been a corporation.   In other words, if these gen-
tlemen represented themselves as agents, when it turns out
they are not, and there was no corporation, the plaintiff
would still be bound under this contract, and the defend-
ants would have the right to stand upon it, just as the cor-
poration would have had the right to have stood if it had
been a corporation.   Now, what does it require?   It has a
good many sections, and the only thing I have heard dis-
cussed was, that the company should not be liable if the
machinery was operated by steam, or something to that ef-
fect.   I do not find that in this paper; it refers to certain
by-laws, and whatever those by-laws contain this plaintiff
is bound by—no matter whether a corporation or not—if
he signed that paper; the paper refers to certain by-laws,
whatever those by-laws prescribed he is bound by it.   What
are the by-laws?   Have you any proof what the by-laws of
this concern are, if there are any?   I charge you, that I rule
out as a matter of law any by-laws of the Chester company.
Now, a member of an association is bound to know what
the by-laws are.   One who has stock in a corporation is
presumed to know what the by-laws are; that's a presump-
tion of law, that a member of a corporation is presumed to
know what the by-laws are.   It is not necessary that an as-
sociation be incorporated in order to have by-laws; the same
rule applies to members of unincorporated associations—
they are presumed to know what the by-laws are.   Over
his signature he agrees to be bound by the by-laws.   Un-
fortunately for the defendants, there has been no proof of any
by-laws.   If there has been any proof of a by-law by which

the defendants were relieved from liability—as, for instance, if a steam engine should be used in the building—and if the requirement by that by-law and his agreement was not to use steam, and he did it and the fire was occasioned thereby, and the house was burned down in consequence, then they would not be liable. I do not remember that there was any testimony as to the by-laws of this company.

Mr. Croft: None whatever.

The Court: There was some testimony on the part of Mr. Hardy as to reading over certain by-laws; if those were the Chester by-laws that were brought to your attention, then I charge you they cannot affect this case—would be by-laws of a different concern. Now, coming to another point of this case; the plaintiff charges he was misled, deceived by the defendants. Now, in reference to misrepresentation, there are several things which are necessary; must be a misrepresentation of a fact—not an opinion expressed—it must be misrepresentation as to a material matter. It must appear that the plaintiff has been prejudiced by the misrepresentation—been damaged; must, also, appear that he did not know at the time that the misrepresentation was made that it was not true. I charge you, that although a fact may be misrepresented by a party, yet if the person to whom it was made knew that it was not a fact, he cannot be said to be prejudiced by it or to be damaged in consequence of it. For instance, if at the time of this contract, if representations were made either by words or conduct—because a man can misrepresent by his conduct the transaction as well as by words—if at that time, now, the plaintiff knew that it was not an incorporation, if that appears from the testimony, not from any suspicion you may have had from the testimony—if it appears he knew it was not an incorporation—then, although he may have suffered damage in consequence of not being an incorporation, still he could not complain, because, if he knew of the fact himself, it matters not that the fact was misrepresented by another.

Now, gentlemen, there are certain requests to charge which have been handed to me by the plaintiff and by defendants. I am requested by the plaintiff to charge:

"That if a person assumes to act as the agent of a principal who has no legal existence, and as such agent enters into such contract with another, then the person contracting as such agent renders himself individually liable to the party with whom he contracts; and if such party has been damaged by reason of his having relied upon such contract, then the person who entered into such contract as agent renders himself individually liable to the other contracting party, the extent of such liability being the damage sustained by such contracting party by reason of his having relied upon the contract so entered into with him." I so charge you.

"2d. That corporations have only such powers as are expressly granted to them by their charters, or such as are necessarily implied to carry out the purposes for which they were chartered." I so charge you.

"3d. That it is the province of the court to construe the charters of corporations, and the jury are bound to accept the construction as given by the court, and in the case now on trial the court instructs the jury that the Farmers' Mutual Insurance Association of Chester had no right to organize or create any subordinate corporation in Edgefield, and that such subordinate association is not a corporation, and it has no power to make a contract." I so charge you.

"4th. If the jury believe from the evidence that the defendants, W. H. Timmerman and J. S. C. Carpenter, signed the instrument produced by the plaintiff, which purports to be a policy of insurance, and that the defendant, J. W. Hardy, solicited the plaintiff to enter into such contract, and if the plaintiff was induced by such act to enter into and accept such contract as a valid policy of insurance, then the defendants are liable to the plaintiff for all damage which he sustained through his reliance upon such supposed contract." I so charge you, with the modifica-

tion that it must be the proximate result, must be damage which results directly from the act.

"5th. That whether the defendants entered into the contract through fraud or *bona fide*, makes no difference as to their liability to the plaintiff; for the law is, that if one of two innocent persons must suffer loss, he who brought about such condition is responsible, and is bound to make good to the other party any damage which his unauthorized act has brought about." I so charge you, reference being particularly had to the expression "innocent person." That involves what I have already told you, that at the time the representation was made the plaintiff must have been ignorant of the fact himself.

"6th. If the jury find for the plaintiff, then he is entitled to recover the amount which the evidence shows that he has been damaged by fire to the gin house and machinery named in the supposed policy of insurance to the extent of $500; that is, if the damage to the gin house and machinery amounts to $500 or more, the plaintiff could only recover $500; but if the damage is less than that amount, then the verdict should be for the actual damage—whatever the jury may find that to be." I so charge you.

The defendants request the court to charge as follows:

"1st. It is now settled law that there can be no fraud, misrepresentation or concealment in law without some moral delinquency, there can be no actual legal fraud, which is not a moral fraud." I so charge what I have read, and decline to charge so much of the request which is designated by parentheses.

"2d. In order that the plaintiff may recover in this action, he must show that there was no such corporation as the one described in the complaint, and that the defendants at the time of the issuance of said policy attempted to insure the plaintiff in a concern that had no legal existence." I so charge you, having erased certain words which I decline to charge, which are indicated upon the request itself.

"3d. Fraud is not presumed from the fact that the state-

ments are false; but the plaintiff must prove the fraud, as well as every other material allegation of the complaint denied by the answer of defendants, by the preponderance of the evidence." I so charge you, modified in this way: Fraud is not presumed from the fact that the statements are false, that is true only as to actual fraud. I further modify that request as follows: But fraud may be inferred from all the facts and circumstances which have been proved.

"4th. In order to constitute actionable fraud, so far as the question of knowledge is concerned, the jury must believe from the evidence that the defendant being without knowledge, and without any belief on the subject, recklessly made the representations with the intent to deceive, before they can find a verdict for the plaintiff." Modified as follows: But every man must be presumed to intend to do what he does, and to mean what his words spoken or written would reasonably imply; therefore, if one makes statements which, from the words used taken in their common acceptation, a certain conclusion is reasonably drawn by another, such conclusion must be presumed to have been intended.

"6th. Before the plaintiff can recover in this action, he must establish by the preponderance of the evidence three things: 1st. That the representations were false; and 3d. That the plaintiff has been damaged by said false representations." The second subdivision I decline.

"7th. If the jury believe from the evidence that the defendants ——." The seventh I decline, there being no allegation or proof of mutual error.

"8th. That to constitute fraud, it is not only necessary that the representations should be false, but also that the party making it should know it to be so, or have reason to believe it to be so at the time it was made; fraud and the scienter or guilty knowledge constitute the grounds of the action." I charge you this: This is true as to actual fraud, but does not apply to this case.

If you find for the plaintiff, you will say: We find for the

plaintiff so many dollars, writing it out in letters, and not in figures. If you find for the defendant, simply say: We find for the defendant. In either case, sign your name as foreman. Give the record to the jury.

The jury retired and brought in a verdict in favor of the plaintiff for $500, and judgment was duly entered thereon. The defendants gave due and legal notice of intention to appeal. From this judgment the defendants appeal on the following exceptions:

1st. Because the presiding Judge erred in overrnling the defendants' motion for a nonsuit.

2d. Because the presiding Judge erred in holding, on defendants' motion for a nonsuit, that the defendants admitted the corporate existence of the association described in the complaint and named in the policy of insurance held by plaintiff, and that the admissions of the answer were sufficient to carry the case to the jury.

3d. Because the presiding Judge erred in allowing the case to go to the jury when there was no evidence adduced to show that the plaintiff did not have a valid contract of insurance, which policy constituted the basis of the action.

4th. Because the presiding Judge erred in charging the jury, as mentioned in the plaintiff's fourth request, which was as follows: "If the jury believe from the evidence that the defendants, W. H. Timmerman and J. S. C. Carpenter, signed the instrument produced by the plaintiff, which purports to be a policy of insurance, and that the defendant, J. W. Hardy, solicited the plaintiff to enter into such contract; and if the plaintiff was induced by such act to enter into and accept such contract as a valid policy of insurance, then the defendants are liable to the plaintiff for all damage which he sustained through his reliance upon such supposed contract;" for the reason that the defendants would not be liable, if the plaintiff knew as much as the defendants in reference to the policy of insurance so issued.

5th. Because the presiding Judge erred in charging, as

requested in the said fourth request of plaintiff, in that he charged upon the facts, in violation of sec. 26, art. 4, of the State Constitution.

6th. Because the presiding Judge erred in charging the jury, as contained in the plaintiff's fifth request to charge, as follows: "That whether the defendants entered into the contract through fraud or *bona fide*, makes no difference as to their liability to the plaintiff; for the law is, that if one of two innocent persons must suffer loss, he who brought about such condition is responsible, and is bound to make good to the other party any damage which his unauthorized act has brought about." Such principle of law, if sound, is inapplicable to this case, as the policy was a mutual contract of insurance and a mutual agency for an unauthorized principal (if such was the case), and as no personal liability could arise between the parties thereto, all·being on an equal footing.

7th. Because the presiding Judge erred in refusing to charge the eighth request of the defendants, which was as follows: "That to constitute fraud, it is not only necessary that the representation should be false, but also that the party making it should know it to be so, or have reason to believe it to be so, at the time it was made; the fraud and the scienter or guilty knowledge constitute the grounds of the action."

8th. Because the presiding Judge erred in charging the jury that the Farmers' Mutual Fire Insurance Association of Chester, S. C., had no right under its charter, or under the law, to organize subordinate or branch organization in Edgefield County, as was done in this case.

9th. Because the presiding Judge erred in ruling and holding that good intention, good faith, and honesty of purpose amounted to nothing in a case like the one at bar.

10th. Because the presiding Judge erred in refusing to allow the defendants to introduce in evidence the by-laws of the Farmers' Mutual Insurance Association of Chester, S. C., when it appeared that the self-same by-laws were the

by-laws to which reference was made in the policy issued to plaintiff, and were read over to and explained to plaintiff before said policy was issued to him.

11th. Because the presiding Judge erred in holding and ruling that the defendants justified by setting up the act of the legislature creating the Chester association, and that they must stand or fall by that justification, and in not allowing the defendant, Dr. W. H. Timmerman, to show his good faith and honest intentions in the execution and delivery of the insurance policy.

12th. Because the presiding Judge erred in charging the jury that if the defendants were acting for an unauthorized or undisclosed principal, they were personally liable when the policy of insurance offered in evidence by the plaintiff was a mutual insurance contract, and the plaintiff by signing the same thereby became as much the agent of an unauthorized and an undisclosed principal as the defendants.

13th. Because the presiding Judge erred in holding and ruling that the defendants could not introduce the by-laws of the Chester association in evidence, unless they proved mutual or common error in the issuance of the policy to the plaintiff, and that this could not be shown or proved without alleging the same in their answer.

14th. Because the presiding Judge erred in restricting the defendants in their testimony to the policy of insurance itself, and to what occurred at the time of its issuance, and in not allowing the defendant, W. H. Timmerman, to testify as to the matters that occurred prior and subsequent thereto.

15th. Because the presiding Judge erred in holding that this case was one of constructive fraud solely, which he erroneously defined to be "such as the law infers from the relationship of the parties, and from the circumstances by which they are surrounded, and from the negligent performance of some act or the negligent omission to do something, whereby another has been deceived to his prejudice."

16th. Because the presiding Judge erred in charging the jury at one time that in many cases what is known as a

legal fraud there is no moral fraud, and at another time that there can be no fraud without moral delinquency.

17th. Because the presiding Judge erred in charging the jury as follows: "Did the defendants so represent (that the policy was issued by a corporation)? If they did—if they issued the policy as a corporation when they were not, and the plaintiff, not knowing that they had no such authority, believing that they had, took out this policy, paid his money for it and was misled by the defendants, and has suffered loss as a proximate result, then the defendants are liable."

The following is the judge's charge, in the case of J. H. LaGrone against W. H. Timmerman, J. S. C. Carpenter, and J. W. Hardy:

Mr. Foreman and gentlemen of the jury: It is very pleasant to you, doubtless, as I know it is to me, to listen to the eloquent arguments of counsel, and judges as well as juries are more or less affected by them. It is their province to present the case for their clients, and in this cause each side has been presented well. It now becomes our duty to decide the case. It is my province to pass upon the law of the case; you are to take the law from the bench. If I should be mistaken in what I say to you, there is another court where my rulings can be reconsidered, and if any injustice results, that can be corrected. But it is for you to consider the facts, uninfluenced by anything I might say to you, even if I were disposed to say anything to you; I have no right to express any opinion about any of the facts of the case; they are for you, and exclusively for you. Now, the issues are presented by the pleadings. The plaintiff comes into court, and in this paper presents his cause of action. What does he tell you? He tells you, in substance, that on the 9th of October, 1893, the defendant, J. W. Hardy, representing himself as soliciting agent of a corporation he styled as the Farmers' Mutual Fire Insurance Association of the county of Edgefield, induced the plaintiff to take out an insurance policy in said alleged corporation, covering the plaintiff's gin-house and

machinery for the sum of $500 against loss by fire, which, by the terms of said pretended policy, was insured from said date until the said policy should be canceled by the plaintiff or by the said pretended association, the plaintiff paying a premium of $2.50 for said policy of insurance, and being by the terms thereof subject to further assessment for losses incurred by said company, it being represented that said association was a mutual fire insurance company. The plaintiff further alleges, that said defendants caused to be issued to him said policy of insurance, wherein the defendant, W. H. Timmerman, signed, styling himself as president, the defendant, J. S. C. Carpenter, signed, styling himself as general agent of said company, and the defendant, J. W. Hardy, representing himself as the soliciting agent of said company. The plaintiff further alleges that he took the policy as a genuine policy, and thereafter, within the time limited, his property was burned by fire—his gin-house and machinery—and that he lays his damages caused by the fire in the amount of $500, for which he prays judgment.

Now, the defendants, on their part, come into court, and by their answer they represent to the court their side of the case. In the first place, they deny what the plaintiff says, except so far as their answer admits the allegations of the complaint; and they say to you, "that under and by virtue of an act of the General Assembly of this State, approved December 18th, 1891, entitled an act to incorporate the Farmers' Mutual Insurance Association of Chester, S. C., J. S. C. Carpenter, R. T. Mockbee, W. O. Guy, O. Barber, and all other persons who shall become members thereof, were constituted a body politic and corporate, under the name of the Farmers' Mutual Insurance Association of Chester, S. C., and under that name shall have all the powers, privileges, and franchises incident to such corporations under the laws of this State." And thereafter certain provisions of that act are set out in the answer. They say: "That on the     day of December, 1891, at the town of Edgefield, in the county of Edgefield, in the State aforesaid, under and

by virtue of the power and authority conferred by said act of the General Assembly of said State and the by-laws of said corporation hereinbefore set forth, J. S. C. Carpenter, the general agent of said corporation, proceeded to organize, and did organize, a subordinate or branch organization of the said the Farmers' Mutual Insurance Association of Chester, S. C., for the county of Edgefield, and the defendant, W. H. Timmerman, was chosen president, and J. S. C. Carpenter was chosen general agent of said subordinate organization."

Then they further allege: "That on or about the 9th day of October, 1893, a policy of insurance was issued to the plaintiff in said the Farmers' Mutual Insurance Association of Chester, S. C., by the said subordinate organization for the county of Edgefield, covering the plaintiff's gin house and machinery, and thereby said association and the plaintiff who signed said policy became mutually bound by the terms, limitations, and conditions therein contained, and the by-laws of said association made a part thereof; and said policy of insurance was, in all respects, a valid and binding contract of insurance, according to the terms thereof; and the loss sustained by plaintiff would long since have been paid, if he had been at law or in equity entitled to same under the terms of said policy." Then they say that one of the by-laws of that company provided: "The agent shall take no steam engine into this association. If a gin house or other buildings be taken into this association which shall at intervals be operated by steam, the insurance on such building, or buildings adjacent and endangered thereby, shall be removed so long as it is operated, but the steam being removed from such building, the policy shall again become intact.'

"That the property covered by said policy of insurance was a gin house and machinery, operated by steam at intervals, and the said property was destroyed by fire when the same was being operated by steam, and under the terms of said policy of insurance, and the aforesaid by-laws being a part and parcel thereof, the insurance was removed at the

time said property was destroyed by fire, and the plaintiff was not entitled to anything at law or in equity under the said policy, and for that reason alone he was not paid the amount specified in said policy or any sum whatever."

Now, then, as an amendment to the answer, they raise further issue: "For a further defence, the defendants allege that, when the policy of insurance described in the complaint was issued to the plaintiff, it was mutually understood by both parties thereto that it was the Farmers' Mutual Insurance Association of Chester, S. C., operating in Edgefield County through its subordinate branch in said county, that was being bound, and the corporation therein referred to; and that by the use of the words 'the Farmers' Mutual Fire Insurance Association of South Carolina,' and 'the Farmers' Mutual Fire Insurance Association for the County of Edgefield,' used in said policy, were put there by mutual error and mistake of the parties—each of whom at the time of the issuance of said policy well knowing that the Farmers' Mutual Insurance Association of Chester, S. C., operating in Edgefield County through its said subordinate branch, was the insurance company bound thereby, and was named and called by all parties thereto as the Farmers' Mutual Fire Insurance Association of South Carolina, and the Farmers' Mutual Fire Insurance Association for the County of Edgefield; and that in using the latter words the parties thereto meant the Farmers' Mutual Insurance Association of Chester, S. C., operating in Edgefield County through its said subordinate branch, and that it thereby became liable on said insurance contract."

Those are the issues presented which have been formulated by the parties in their pleadings, which have been read to you. Now, gentlemen of the jury, the plaintiff claims that he was misled by the defendants, that the defendants represented that they were acting as agents of a corporation, and that when he took out this policy he believed he was taking out a policy issued by a corporation. Now, what is a corporation? It is an artificial being cre-

ated by the legislature, where several persons petition that they be allowed to transact any kind of business as one person; that they and their successors shall continue as one person in law—no matter how many persons come in and how many members go out, it still remains an artificial being. As some one has said, like the river Thames, although it changes every minute, it is the same river. It is an artificial being created by statute, created by the legislature, and having only such powers as are expressly granted in the charter, in the act of the legislature, or as are by implication necessary to carry out the powers that are so granted.

By referring to the act of the legislature by which the Chester company was created, they say that the Chester company could not organize a corporation in the county of Edgefield, had no such power, that the act did not give it to them; and, furthermore, if the act did give it to them, it would be unconstitutional, because, while the legislature has the power to create a corporation, it could not delegate that power to a corporation. So far as that part of the answer is concerned, you may eliminate it; they are not protected by the charter granted to the Chester company. I do not think there is any doubt about that. But they say, at the time this policy was issued, that they intended to insure under the power granted by the legislature to the Chester company, their intention being now to act as agents of that company, being duly authorized by law, as they understood it, and that at the time when plaintiff took this policy he so understood it, and it was a mutual mistake. Now, upon that I charge you, gentlemen of the jury, that the defendants cannot be relieved from liability under that defence, unless you believe it was a mutual mistake. No matter what Governor Timmerman understood, no matter what Mr. Carpenter understood, no matter what Mr. Hardy understood, no matter what they intended, no matter how honest they may have been in their belief, unless you come to the conclusion that this plaintiff also understood it, also

made the mistake, also fell into the error—in other words, that it was a mutual error—then that defence cannot help them; but if it was a mutual error, if both parties to this contract did so believe, did so intend, did make this mistake mutually, then it would be a good defence; because, now you observe in every contract, the very term itself implies, there must be a coming together, two minds must meet. Did their minds meet upon this contract? If both parties to it were in common error, both parties intended that the contract should be something different from what is written, if it was common error, then the plaintiff could not claim he was damaged; it must have been a mutual mistake, no doubt about that.

Assuming there was no mutual mistake—that is for you to determine entirely—but now, in the event that you should come to the conclusion, in the first place, that those defendants did sign that policy, representing themselves as agents of a certain corporation, and here you have the right to take the testimony on the stand, and the admissions in the answer, you have the right to consider all these matters in coming to your conclusion—did they intend now to insure him in a corporate body? Did they sign a paper called a policy of insurance and take his money, and deliver him that policy under those circumstances that led him to believe that he was taking out a policy of insurance in a corporation—then, I charge you, that whenever one, as an agent, assumes to act for another, and that other was not authorized himself to do the act, that the agent is personally liable. The law requires every one, when he assumes to act for another, to disclose his principal, to say who his principal is, and if he does not do it, and you make a contract with him, you can sue him, you can make him individually liable; so, if he represents that he is agent of a corporation, when there is no corporation in existence, then he is bound just as the corporation would have been bound had it been in existence. Upon that I will read to you from a decision of our own courts, which, I think, bears

upon this question, *Edings* v. *Brown*, 1 Rich. Law, page 256. There is a good deal in this case, gentlemen, that I would not deem it necessary to read to you, but as the case is not very long, I will read it. It contains, as I understand it, the law as laid down by the former Supreme Court of South Carolina, upon this subject as to where one signs a paper as agent, when, in fact, he was not agent: "In 2 Kent. Com., 630, 2d ed., it is affirmed, 'that an agent becomes personally liable when the principal is not known, or where is no responsible principal, or where the agent becomes liable by an undertaking in his own name, or when he exceeds his power. In Story on Agency this doctrine is said to rest on a plain principle of justice, for every person acting for another, by a natural if not a necessary implication, holds himself out as having competent·authority to do the act, and thereby draws the other party into his reciprocal engagement.' It is contended, that under these authorities, the agent is only responsible in an action on the case; and that an action cannot be maintained on the instrument, as if it were executed by the agent personally. But the cases cited refute such construction. In *Ellis* v. *Dusenbury*, 3 Johns., cases 70, the note was signed 'for Peter Sharpe, Gabriel Dusenbury, attorney, and it was ruled that the defendant was bound, as if he had executed the note in his own name; and that the name of the person for whom he assumed to act should be rejected as surplusage, and that the party accepting the note under such mistake or imposition should have the same remedy against the agent as he would have had against the principal if he had been really bound.' In *Ballou* v. *Talbot*, 16 Mass. Reports, it was held that 'an agent without authority, signing a note in the name of another, was only liable in case.' Another case referred to here, the court says: 'It was an action on the case by an endorsee against the defendant for accepting, by procuration, a bill for the drawee, not having authority to do so. The circumstances precluded any imputation of fraud, and on the trial Lord Tenterden directed

the jury to find a verdict for the defendant, with leave to
move to set it aside and enter the verdict for the plaintiff.'
You will observe in that case all imputation of fraud was
excluded, and the judge directed that the verdict be entered
for the defendant.   It went up to the higher court, and the
King's Bench ordered judgment to be entered for the plain-
tiff, on the ground 'that the mere misrepresentation by the
defendant, of his authority to make the acceptance for the
drawee, made him liable to all by whom the bill might be
taken on the faith of the acceptance, for the injury sustained
by the unauthorized act of the defendant.'   In the opinion
of the court, delivered by Lord Tenterden, it is said an
action could not have been maintained against the defend-
ant as acceptor.   Whenever one undertakes to make a con-
tract in the name of another, his signature should be held
as a guaranty that he has authority to bind the principal.
It is only just that one who pretends to give a security to
another, by assuming to contract in the name of a person
whom he has no authority to bind, should supply, out of
his own means, the security which he fails to impose on
his principal.   'The undertaking to bind another, without
authority to do so, imports fraud or culpable negligence,
and should fix on the guilty person responsibility for the
injury that may result from his act.   All the authorities
agree that the measure of damages must be the injury sus-
tained, whether the action be in tort or on the contract, and
the conflict of authorities is resolved into a question of the
form of the action.   An action on the instrument affords
the most direct and just measure of compensation.   If the
contract be for the payment of money, in either form of
action the damages must be the sum stipulated; and if the
contract be for performance of any other act, compensation
for the breach or neglect of the duty may as fairly be de-
cided in the one form as the other.'

'It is objected, that by holding the deed to be the deed
of the agent,            .'   You will observe here is a case
where the agent made the deed, signed in this way: 'Cath-

arine Brown [L. S.], per R. E. Brown, trustee.' In this case, Catharine Brown was a married woman at that time; she had no right to make this contract; had no right to appoint an agent to bind her by his act. The contract was made, and signed 'Catharine Brown [L. S.] (her seal), per R. E. Brown, trustee.'

'It is objected, that by holding the deed to be the deed of the agent, the intention apparent in the terms of the execution of it, that he should be a party only as agent, and his nominal principal bound to the stipulation of the instrument, is violated.'

'The intention of the other and innocent contracting party is defeated, if he has not that security which the agent professed and undertook to give. In this alternative, the wrong-doer cannot complain that he should be substituted to that contract which he imposed on the other party, by undertaking to execute in the name of a principal whom he had no authority to obligate. Such substitution is only fair and reasonable indemnity. It is enforced in the case of a guardian contracting in the name of his ward—of an administrator contracting in his representative capacity—of a trustee for his *cestui que trust*—of an agent buying goods in the name of his principal, who exceeds his authority, on the principle that a contracting agent is bound where there is no responsible principal to whom resort can be had. In all these cases, it is manifest that the parties held answerable never intended to make themselves liable, and may have received no consideration, and yet it is held they are bound. In *Sumner* v. *Williams and others*, 8 Mass. R., 176, the administrators of an insolvent's estate, under a license of the court to sell, by deed conveyed an estate. In all the terms and covenants of the deed, the representative capacity in which the defendants contracted was sedulously expressed. It is admitted, in the judgment of the court, that the grantors intended to guard against any personal liability, and that the grantees did not rest on any supposed liability of the grantors for their security, but both parties believed the estate of the

intestate would alone be affected by the covenants. To the arguments derived from these considerations, the reply of the court is, you meant to secure us by these covenants; and as you had no authority to do it in the form you contemplated, you are bound by your deed to do it yourself." That is the law of South Carolina, as I understand it. It expresses better than I can the law which bears upon that subject.

So, now, if these defendants did undertake to insure this plaintiff in a corporation that had no existence, if they did so represent it, signed their names as president, and so on, although they honestly believed they had the right to do it, although, in their judgment, they had the authority under this Chester charter, and if the plaintiff did not fall into a common mistake at the time, if that mistake was not mutual, then he would be entitled to recover, unless they have brought this under another exception, to which I will refer you. Now, he who claims that he has been damaged by misrepresentation of another, must show that that misrepresentation was of a material fact, and he must show that he has lost as a proximate result of the misrepresentation. Now, was it material here? Did these gentlemen represent that they were officers of corporation? Did they induce this plaintiff to take out that policy under that representation? Then, if they did, it is for you to say whether it is material. Has he sustained any loss by reason of it? Was his house burned down, the house he understood to be insured in this company, and not in the Chester company, then the question would be, what would be his damage?

I will now refer to these "requests to charge." I am requested by the plaintiff:

"1st. If the jury believe from the evidence that there was no mutual mistake between the plaintiff and J. W. Hardy as to the issuing and accepting of the policy of insurance mentioned in the complaint, then the by-laws of the Chester company would not be competent, and the jury should not consider such by-laws." I so charge you. You

must find that there was a mutual mistake before you can consider the Chester by-laws, because that would have nothing to do with this case.

I am further requested by plaintiff to charge:

"That if a person assumes to act as the agent of a principal who has no legal existence, and as such agent enters into a contract with another, then the person contracting as such agent renders himself individually liable to the party with whom he contracts; and if such party has been damaged by reason of his having relied upon such contract, then the person who entered into such contract as agent renders himself individually liable to the other contracting party; the extent of such liability being the damage sustained by such contracting party by reason of his having relied upon the contract so entered into with him." That is good law.

"That corporations have only such powers as are expressly granted to them by their charters, or such as are necessarily implied to carry out the purposes for which they were chartered." I have already charged you to that effect.

"That it is the province of the court to construe the charters of corporations, and the jury are bound to accept the construction as given by the court, and in the case now on trial the court instructs the jury that the Farmers' Mutual Insurance Association of Chester had no right to organize or create any subordinate corporation in Edgefield, and that such subordinate association is not a corporation, and it has no power to make a contract." I so charge you.

"If the jury believe from the evidence that the defendants, W. H. Timmerman and J. S. C. Carpenter, signed the instrument produced by the plaintiff which purports to be a policy of insurance, and that the defendant, J. W. Hardy, solicited the plaintiff to enter into such contract, and if the plaintiff was induced by such act to enter into and accept such contract as a valid policy of insurance, then the defendants are liable to the plaintiff for all damage

which he sustained through his reliance upon such supposed contract." I so charge you.

"That whether the defendants entered into the contract through fraud or *bona fide*, makes no difference as to their liability to the plaintiff; for the law is, that if one of two innocent persons must suffer loss, he who brought about such condition is responsible, and is bound to make good to the other party any damage which the unauthorized act has brought about." I so charge you.

"If the jury find for the plaintiff, then he is entitled to recover the amount which the evidence shows that he has been damaged by fire to the gin-house and machinery named in the supposed policy of insurance to the extent of $500; that is, if the damage to the gin-house and machinery amounts to $500 or more, the plaintiff could only recover $500; but if the damage is less than that amount, then the verdict should be for the actual, damage whatever the jury may find that to be." I so charge you.

The defendants request the Court to charge you as follows:

"If the jury believe from the evidence that the plaintiff was informed when he accepted the policy that he could not recover if the fire should occur at a time when the machinery operated by steam was in motion, then the plaintiff is not entitled to recover." I charge you that, provided the jury believe from the testimony that that condition was agreed to as a part of the contract. If that condition was agreed to as a part of the contract, and if the fire was caused by steam being operated at the time, then he could not recover. If this was stated upon the insurance policy, and the by-laws so prescribed, it would be for the court to say whether that by-law was reasonable or not. I could not undertake to say such a by-law was unreasonable. You would have to come to the conclusion that was incorporated, or understood at the time to be part of the contract. The mere fact that his policy refers to by-laws is not sufficient. While these defendants have the right to stand upon that policy, the policy itself does not set out that provision, but

does refer to by-laws. Now, if you believe that this plaintiff endeavored to get these by-laws, that he was ignorant of them, that he did not know what they contained, then he cannot be bound by them; and we have had no by-laws introduced in this case as belonging to this association, and the Chester by-laws can have no effect upon it, unless, as I have already charged you, there was mutual mistake between the parties in supposing he was being insured in the Chester company.

"It is now settled law that there can be no fraud, misrepresentation or concealment in law, without some moral delinquency; there can be no actual legal fraud which is not moral fraud—." I so charge you, but decline to charge the remainder of the request.

"2d. In order that the plaintiff may recover in this action, he must show that there was no such corporation as the one described in the complaint, and that the defendants at the time of the issuance of said policy * * * attempted to insure the plaintiff in a concern that had no legal existence." I so charge you. I have left out certain words in the request to charge, which I decline.

"Fraud is not presumed from the fact that the statements are false, but the plaintiff must prove the fraud as well as every other material allegation of the complaint denied by the answer of defendants by the preponderance of the evidence." I so charge you, and say further: "Fraud is not presumed from the facts that the statements are false"— that is true as to actual fraud. I further instruct you, that fraud may be inferred from all the facts and circumstances which have been proven.

"In order to constitute actionable fraud, so far as the question of knowledge is concerned, the jury must believe from the evidence that the defendant, being without knowledge and without any belief on the subject, recklessly made the representations with the intent to deceive, before they can find a verdict for the plaintiff." I decline, except with this modification: every man must be presumed to

intend to do what his words, spoken or written, would reasonably imply. If, therefore, one makes statement which, from the words used or written, taken in their common acceptation, a certain conclusion is reasonably drawn by another, such conclusions must be presumed to have been intended.

"5th. If the jury believe from the evidence that the defendants—" The fifth is declined.

"6th. Before the plaintiff can recover in this action, he must establish, by the preponderance of the evidence, three things: 1st. That the representations were false. 3d. That the plaintiff has been damaged by said false representations." I so charge you. I decline to charge the second subdivision.

"7th. If the jury believe from the evidence that the defendant issued the contract of insurance described in the complaint, and in doing so attempted and intended to insure the plaintiff in the Farmers' Mutual Insurance Association of Chester, S. C., by using the words 'the Farmers' Mutual Fire Insurance Association for the County of Edgefield,' and that said name was used for the former association, it is a mere misnomer, the said Chester association would be bound thereby, and the plaintiff could not recover in this action." I decline to charge that, except under conditions already specified.

"That to constitute fraud, it is not only necessary that the representations should be false, but also that the party making it should know it to be so, or have reason to believe it to be so at the time it was made, the fraud and the scienter or guilty knowledge constitute the grounds of the action." I charge you this is true in actual fraud. I charge you on the subject that actual fraud is cunning deception, artifice used to circumvent, cheat or defraud another, and that that is not the basis of this action. As I understand, there is no actual fraud intended to be charged. Constructive fraud is such as the law infers from the relationship of the parties and from the circumstances by which

they are surrounded, and from the negligent performance of some act, or the negligent omission to do something whereby another has been deceived, or misled, to his prejudice; and where the intent to deceive is either established by the testimony or is to be inferred from the facts and circumstances proved. I charge you that, in many cases what is known as legal fraud, there is no moral turpitude.

Now, gentlemen of the jury, take this case. You will consider it upon the testimony, and under the law, without regard to the parties at all. We are to do justice between man and man. Every man has the right to come into court, state his grievance, and prove it. If he proves it by the preponderance of the testimony, and is entitled to relief under the law, then it is the duty of the jury to give it to him. If he does not prove it by the preponderance of the testimony, then it is the duty of the jury to say in their verdict that he is not so entitled to it. By the preponderance of the testimony is meant the weight of the testimony, not the number of witnesses. You may believe one man, and not believe a dozen men. By that testimony which produces coviction in your mind you are to decide the case.

If you find for the plaintiff, you will say: We find for the plaintiff so many dollars, writing it out in letters and not figures. If you find for the defendant, say: We find for the defendant. Take the record. Jury retired.

It was agreed that the jury should render a sealed verdict. Before Court reassembled next morning the jury were released from their consideration of the case, the foreman having announced to the constable in charge of them that they had agreed. On reassembling of Court they were called over and asked if they had agreed upon a verdict. The foreman announced that they had agreed, but, during the interval of their dismissal and the reassembling of Court, one of the jurors had notified him that he was dissatisfied with the verdict.

26—46

The Court said the verdict could not be accepted, and that the jury would have to retire again.

(Mr. Croft objected. Objection overruled.)

Mr. Croft then asked the Court to instruct the jury as to section 20 of the by-laws.

The Court: I have not read all the by-laws. If the only by-law which refers to the exemption of the company when steam is used in a building is section 20, then after reading that section, I will give you my construction of it. "The agent shall take no steam mill into this association. If a gin-house or other buildings be taken into this association, which shall at intervals be operated by steam, the insurance on such building or buildings adjacent and endangered thereby shall be removed so long as it is so operated, but the steam being removed from such building, the policy shall again become intact." As I understand, that policy covered the gin-house and machinery. Now, I charge you, if this insurance had been in the Chester company, the Chester company had given insurance upon the gin-house and machinery, while they had the right to pass this by-law, and while the court rules it is not an unreasonable by-law, still it would be given a strict construction, and if the house had been burned, steam being used, which would exempt the company from liability, it could only exempt the company so far as it is here declared, to wit: as to the building, and would still be liable as to the machinery. That's my construction of section 20.

Jury retired again, and, after considerable deliberation, the foreman announced they desired further information from the court. Jury brought out, and the foreman handed the Court a slip of paper.

The Court: The following question is propounded to the court by one of the jurors, who "wants further information as to the fact of the officers acting unwittingly in representing an insurance company which, in fact, was not a legal company, and its effect on the parties concerned, and

are said officers individually liable for losses under policies issued by them?"

As I charged you before, gentlemen of the jury, where one undertakes to represent a company as agent, and it turns out he was not authorized to act, or that he is acting for some one, or pretending to act for some one, who had no authority to contract, then he who represents himself as agent is individually liable. And I further charge you, that if he so represents himself to act for another, although he may have had honest opinion that he had the authority, yet if it turns out that he had no such authority, and if the person with whom he contracted was not so advised at the time, then he is individually responsible. His good faith has nothing to do with the matter; but when they both— the contracting parties—were equally deceived, where there was a mutual error, he would not be liable.

The jury retired, and brought in a verdict in favor of plaintiff for $208.33⅓, and judgment was duly entered thereon. The defendants gave due and legal notice of intention to appeal, as follows:

1st. Because the presiding Judge erred in overruling the defendants' motion for a nonsuit.

2d. Because the presiding Judge erred in holding, on defendants' motion for a nonsuit, that the defendants admitted the corporate existence of the association described in the complaint, and named in the policy of insurance held by plaintiff, and that the admissions of the answer were sufficient to carry the case to the jury.

3d. Because the presiding Judge erred in allowing the case to go to the jury, when there was no evidence adduced to show that the plaintiff did not have a valid contract of insurance, which policy constituted the basis of the action.

4th. Because the presiding Judge erred in charging the jury as mentioned in the plaintiff's fourth request, which was as follows:

"If the jury believe from the evidence that the defend-

ants, W. H. Timmerman and J. S. C. Carpenter, signed the instrument produced by the plaintiff, which purports to be a policy of insurance, and that the defendant, J. W. Hardy, solicited the plaintiff to enter into such contract, and if the plaintiff was induced by such act to enter into and accept such contract as a valid policy of insurance, then the defendants are liable to the plaintiff for all damage which he sustained through his reliance upon such supposed contract," for the reason that the defendants would not be liable if the plaintiff knew as much as the defendants in reference to the policy of insurance so issued.

5th. Because the presiding Judge erred in charging, as requested in the said fourth request of plaintiff, in that he charged upon the facts in violation of sec. 26, art. 4, of the State Constitution.

6th. Because the presiding Judge erred in charging the jury, as contained in the plaintiff's fifth request to charge, as follows: "That whether the defendants entered into the contract through fraud or *bona fide*, makes no difference as to their liability to the plaintiff, for the law is that, if one of two innocent persons must suffer loss, he who brought about such condition is responsible, and is bound to make good to the other party any damage which his unauthorized act has brought about;" such principle of law, if sound, is inapplicable to this case, as the policy was a mutual contract of insurance and a mutual agency for an unauthorized principal (if such was the case), and as no personal liability could arise between the parties thereto, all being on an equal footing.

7th. Because the presiding Judge erred in refusing to charge the eighth request of the defendants, which was as follows: "That, to constitute fraud, it is not only necessary that the representation should be false but also that the party making it should know it to be so, or have reason to believe it to be so, at the time it was made; the fraud and the scienter or guilty knowledge constitute the grounds of the action."

8th. Because the presiding Judge erred in charging the jury that the Farmers' Mutual Fire Insurance Association of Chester, S. C., had no right under its charter, or under the law, to organize subordinate or branch organizations in Edgefield County, as was done in this case.

9th. Because the presiding Judge erred in ruling and holding that good intention, good faith, and honesty of purpose amounted to nothing in a case like the one at bar.

10th. Because the presiding Judge erred in refusing to charge the defendant's first request to charge without modification.

11th. Because the presiding Judge erred in holding that the law laid down in the case of *Eddings* v. *Brown*, 1 Rich. L., 255, was the law of this case; whereas they differ particularly in this that in the former case the parties were entire strangers and acted at arms' length, and in the case at bar the parties dealt with each other as the members of a mutual insurance association.

12th. Because the presiding Judge erred in ordering or permitting the jury to retire, and resume the consideration of the case when they had once dispersed, thinking that they had agreed upon a verdict, when in fact they had not.

13th. Because the presiding Judge erred in his construction of the twentieth by-law of the association, which is as follows: "20. The agent shall take no steam mill into this association. If a gin-house or other buildings be taken into this association, which shall at intervals be operated by steam, the insurance on such buildings adjacent and endangered thereby shall be removed so long as it is so operated, but the steam being removed from such buildings, the policy shall again become intact," in this that the association would still be liable for the loss of the machinery, even though it was burned when being operated by steam.

14th. Because the presiding judge erred in holding that this case was one of constructive fraud solely, which he erroneously defined to be "such as the law infers from the relationship of the parties and from the circumstances by

which they are surrounded, and from the negligent performance of some act or the negligent omission to do something whereby another has been deceived to his prejudice."

15th. Because the presiding Judge, having charged the jury as contained in the defendant's second request as follows: "It is now settled law that there can be no fraud, misrepresentation or concealment in law without some moral delinquency; there can be no actual legal fraud, which is not a moral fraud," erred by afterwards charging the jury as follows: "That in many cases what is known as legal fraud, there is no moral turpitude."

*Messrs. Folk & Folk* and *Sheppard Bros.*, for appellant.

*Messrs. Croft & Tillman*, contra.

March 26, 1896. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. These two cases, being of a similar character, were heard together; but, as they differ in some of their features, it seems to us best to consider them separately; and we will first consider the case of D. P. Lagrone; but the remarks we shall make in regard to the points made in that case must be regarded as applicable to similar points made in the other case.

D. P. Lagrone commenced his action against the defendants on the 1st day of September, 1894, on a paper purporting to be a policy of insurance, a copy of which is set out in the "Case," to recover the amount of his loss by fire in the destruction of his gin-house and machinery connected therewith. The following is a copy of so much of the policy as it is deemed necessary to set forth here: "$500.00. No. .     .    Policy of the Farmers' Mutual Fire Insurance Association of South Carolina. This agreement this day entered into between D. P. Lagrone (who is called the insured) and the Farmers' Mutual Fire Insurance Association for the county of Edgefield, whereby it is agreed," &c. Setting forth the terms and conditions of the contract in detail, which at this point need not be stated. This paper

was signed by the parties as follows: "W. H. Timmerman, president; J. S. C. Carpenter, general agent; D. P. Lagrone, insured." This contract seems to have been entered into on the 3d day of October, 1893—at least, that is the day from which the insurance was to commence.

This action was brought against the defendants individually, and was based upon the theory that defendants held themselves out as agents of the Farmers' Mutual Fire Insurance Association for the county of Edgefield, when, in fact, there was no such association legally established, and, therefore, the defendants, pretending to act as agents of a corporation having no legal existence as such, and no power to enter into the contract evidenced by the policy, became personally liable for the performance of such contract. The defence was so fully and fairly stated in the charge of the Circuit Judge (which will be reported) as to supersede the necessity of making any further statement.

The case came on for trial before his Honor, Judge Earle, and a jury, and when the complaint was read, the defendants demurred to the same, on the ground that it did not state facts sufficient to constitute a cause of action, "in this, it being described in the complaint as a mutual insurance association, the plaintiff is estopped from denying the corporate existence of the association." The demurrer was overruled, and no exception was noted to such ruling, and there is no ground of appeal imputing error in such ruling. That matter, therefore, may be dismissed from further consideration. It is stated in the "Case" that the answer was amended so as to allege that the plaintiff, having become a member of a mutual insurance association, and having recognized its existence by paying assessments and otherwise, he is estopped now from denying the corporate existence of the association. At the close of the testimony adduced in behalf of the plaintiff, defendants moved for a nonsuit, upon the ground that the plaintiff, having become a member of a mutual insurance association, is estopped from denying its corporate existence; and upon the further

ground that there is no testimony to sustain the material allegation in the complaint, that there was no such corporation as a mutual fire insurance association of Edgefield, South Carolina, a fact which was known to the defendants. The motion was refused, upon the ground that the admissions in the answer were sufficient to carry the case to the jury. The defendants then offered their testimony, and the Judge charged the jury, as set out in full in the "Case," and a verdict was rendered in favor of plaintiff. From the judgment entered thereon defendants appealed, upon the several grounds set forth in the record; but as they should be embraced in the report of the case, along with the Judge's charge; we need not set them out in detail here.

The first, second, and third grounds of appeal may be considered together, as they all relate to the question as to whether the nonsuit was improperly refused. It seems to us that the most cursory reading of the pleadings and evidence, as set out in the "Case," will show that there was testimony tending to prove that the Farmers' Mutual Fire Insurance Association of Edgefield County had no legal existence at the time this policy was issued, in October, 1893, and never had any such existence until the act constituting such corporation was approved, 4th January, 1894, 21 Stat., 619, which act was offered in evidence before the plaintiff closed his testimony. And the answer shows that this fact was known to defendant, who manifestly relied upon the erroneous notion, as we shall hereafter see, that under the by-laws of the Chester association, which had been chartered in 1891, they had authority to organize the Edgefield association, and undertook to do so. If, therefore, the Edgefield association had no legal existence, it is difficult to understand how the plaintiff could become a member of a corporation which had no existence; and the fact that he undertook to become so, under the mistaken misrepresentation of defendants that there was such a corporation, certainly could not work the estop-

pel claimed by the defendant. We think it clear that neither of these three grounds can be sustained.

The fourth and fifth grounds of appeal impute two errors in charging plaintiff's fourth request: 1st, in not adding to that request the further instruction that defendants would not be liable if the plaintiff knew as much as the defendants in reference to the policy of insurance. 2d. That in charging that request, the constitutional inhibition against charging on the facts was disregarded. As to the first imputed error, two answers may be made. In the first place, the Judge was not requested to give any such additional instruction, and if the defendants desired such instruction, it was their duty to ask for it. And, in the second place, there was no testimony upon which such instruction could, properly, have been asked for, as there was no evidence that plaintiff knew as much as the defendants in reference to the policy of insurance. As to the second error, the phraseology of the request itself—"if the jury believed from the evidence," &c.—is a sufficient answer to that imputation.

The sixth, seventh, ninth, and eleventh grounds of appeal make substantially the same question, and may, therefore, be considered together. That question is, whether the defendants càn be held liable without proof of actual moral fraud on their part. That point is so conclusively determined by the authorities in this State adversely to the view contended for appellants, that we need not go elsewhere for authority, though much of it will be found collected in our own cases, upon which we shall rest our conclusions. In *Bank* v. *Wray*, 4 Strob., 87, it was held, expressly affirming the previous case of *Edings* v. *Brown*, 1 Rich., 255, that if one signed a note or endorsed a bill, as agent, when he is not agent, he is personally liable, although he do so *bona fide*, and does no other act to deceive or mislead the person with whom he deals, except by the assumption of agency when he is not agent. Falsehood and deceit are not necessary to charge

an agent peronally with a contract he had no authority to make. In the opinion of the Court in that case we find language so pertinent to the present case that we quote and adopt it here: "The injury proceeded from the act of the defendant. He would evade liability under the plea of innocent mistake. In a moral sense, the act of defendant may have been innocent, for he had no desire or apprehension of mischief to his principal; but in its practical effect, it was not innocence. * * * But even when the agent *bona fide* believes he has authority to contract and has not, he is still personally liable. In such cases, it is true, the agent is not actuated by any fraudulent motive, nor has he made any statement which he knows was untrue. But his liability depends on the same principle as in the first case." In this case, the Court takes pleasure in saying that the evidence does not justify any imputation of moral fraud or intentional wrong on the part of the defendants; and, indeed, we do not understand that any such imputation is made. But, under the principles laid down in the cases above cited, in which cases of the highest authority elsewhere are reviewed, we must hold that the absence of moral fraud or intentional wrong-doing on the part of the defendants is not sufficient to relieve them from liability. It follows, therefore, that these grounds must be overruled.

The eighth ground of appeal, which imputes error to the Circuit Judge in instructing the jury that the Farmers' Mutual Fire Association of Chester, S. C., had no power to organize a subordinate branch organization in Edgefield County, cannot be sustained. That a corporation, which is a creature of the Legislature, can have no powers except such as are conferred by its charter, either in expressed terms or by necessary implication, is a proposition too well settled to need authority to support it. But, if any is desired, it may be found in the case of *Thomas* v. *Railroad Company*, 101 U. S., 71, and in *Oregon Railway Co.* v. *Oregonian Railway Co.*, 130 U. S., 1. Turning, then, to the charter of the Chester association, which will

be found in 20 Stat., 1315, it is very clear that no such power has been conferred, either in express terms or by necessary implication. We do not wish to be understood as admitting that the Legislature would have the power to delegate its legislative power to a corporation by authorizing it to create another corporation; for the Legislature has not undertaken to do so, and, hence, no question as to its power, in that respect, arises in this case.

The tenth and thirteenth grounds, which impute error in refusing to receive the by-laws of the Chester association in the evidence in this case, may be considered together. Inasmuch as the policy upon which this action was based contained no reference whatever to the by-laws of the Chester association, it is difficult to conceive how such by-laws would be pertinent to any issue in this case. This ground is overruled.

The twelfth ground of appeal cannot be sustained. If the Edgefield association had no legal existence, as we have seen, it is difficult to conceive how it could have any members of any kind. The policy purporting to be issued by a company or association which had no legal existence, and which, therefore, could have no agents, does not and could not render any of the parties agents of such non-existent corporation. That association cannot be regarded as a *mutual* company, for the obvious reason that it was no company at all.

The fourteenth exception cannot be sustained. It is a familiar rule that when the parties have reduced their contract to writing, the Court can only look to the terms in which the parties have expressed their intention in such writing. In 1 Greenlf. on Ev., sec. 275, it is said: "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all

oral testimony of a previous *colloquium* between the parties, or of conversation or declaration at the time when it was completed or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected. In other words—as the rule is now more briefly expressed—parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." Under this rule it is very clear that the testimony of the witness referred to in the fourteenth exception, as to what occurred at the time the policy was issued or before or afterwards, was inadmissible.

The fifteenth exception cannot be sustained. In the first place, the Circuit Judge did not instruct the jury that this was a case of constructive fraud; but, if he had done so, we, as we have said, so regard it, and think it due to the defendants to say that there does not appear to be any element of moral fraud in the transaction; and, in the second place, there was no error in his definition of constructive fraud, as may be seen by reference to these standard authorities: Cooley in his work on Torts. 474; Story in his Equity Jur., secs. 258–9, and 2 Pom. Eq. Jur., section 4 of chap. III.

The sixteenth exception must be overruled. It is an entire misconception of the charge of the Circoit Judge to suppose that there was any inconsistency whatever in the charge. In the first place, in response to one of the requests submitted by the defendants, he was speaking of actual moral fraud, while in the other place he was speaking of a different and distinct class of frauds—legal or constructive fraud.

The seventeeth exception needs no special consideration, and it is very obvious from what we have already said that it cannot be sustained.

We proceed next to the consideration of the case of J. H. Lagrone, or rather to those points wherein it differs from the case of D. P. Lagrone. The main difference between

the two cases is, that in the case of J. H. Lagrone the answer was amended by inserting a paragraph alleging a mutal mistake in framing the policy of insurance, and that it was mutually understood that the policy was issued by the Farmers' Mutual Insurance Association of Chester, S. C., operating in Edgefield County through its subordinate branch, and was the company bound thereby, and that by the name used in the policy the parties meant the Farmers' Mutual Insurance Association of Chester, S. C., operating in Edgefield County through its said subordinate branch, and that it hereby became liable on said insurance contract; whereas, in the case of D. P. Lagrone, there was no such amendment, and no such allegation in the answer. The only exceptions, therefore, necessary to be noticed in this case are the tenth, eleventh, twelfth, and thirteenth.

The tenth exception cannot be sustained for two reasons: 1st. Because it is not in proper form, as it does not set forth the request to charge referred to, or the modification complained of. 2d. Because, even if it was presented in the proper form, it could not be sustained, because the request as submitted was charged, and the only modification made was a very proper one, that the jury should believe the fact upon which such request was based. There being nothing in the policy to show that there was any condition therein stated that the insurance should be void if the fire occurred while the machinery was being operated by steam; of course, it was necessary that the jury should be satisfied by the evidence that such condition was agreed to as a part of the contract, before such condition could affect the plaintiff's right to recover. It is clear that there was no error in so modifying the request.

The eleventh exception is based upon the assumption that the policy was issued by a *mutual* insurance association, and, as we have seen, there was no such corporation as that named in the policy, this assumption is unfounded. This exception cannot, therefore, be sustained.

The twelfth exception must be overruled, as the question

there made is distinctly disposed of adversely to appellants by the case *Devereux* v. *Champion Cotton Press Co.*, 14 S. C., 396, where the facts were substantially the same as those presented in this case.

The thirteenth exception cannot be sustained for two reasons: 1st. Because the point there raised has no practical application to this case.    2d. Because, even if it had, there was no error in the construction which the Circuit Judge placed upon the by-laws referred to.    *First.* Inasmuch as the jury had been explicitly instructed that, if they believed that there was any such mutual mistake as that alleged in the amendment to the answer, the plaintiff could not recover; and inasmuch as the jury did find a verdict in favor of the plaintiff, we are compelled to assume that the jury did not believe that there was any such mutual mistake; and, if there was not, then it is impossible to conceive what the by-law of the Chester company had to do with this case.    Hence, the proper construction of such by-law would be a purely speculative matter so far as this case is concerned; and, consequently, it would make no difference whether the Circuit Judge was right or wrong in his construction of the by-law.    *Second.* The by-law referred to reads as follows: "The agent shall take no steam mill into this association. If a gin-house or other buildings be taken into the association which shall at intervals be operated by steam, the insurance on such building or buildings adjacent and endangered thereby shall be removed so long as it is so operated; but the steam being removed from such building, the policy shall again become intact."    The Judge construed this by-law as a reasonable by-law, but that it must receive a strict construction; and, therefore, while the company would be relieved from liability *for the building* if it was burned while the machinery was being operated by steam, it would not relieve the company from liability *for the machinery* if it was burned while operated by steam, for the reason that nothing was said about machinery in the by-

law. We do not see how any other construction could be placed upon it, without interpolating words into the by-law which it does not contain. But, as we have said, we do not regard this question as pertinent to the case.

It will be necessary for the Reporter to include in his report the charge of the Circuit Judge, and the exceptions thereto, in this case of J. H. Lagrone, as well as the charge and the exceptions in the case of D. P. Lagrone.

The judgment of this Court is, that the judgment of the Circuit Court, in both of the cases above stated, be affirmed.

MR. JUSTICE GARY, *dissenting*. In my opinion, there was testimony tending to show that the plaintiffs contracted with reference to the by-laws of the Farmers' Mutual Insurance Association of Chester, S. C., and that his Honor, the presiding Judge, was in error in his charge to the jury upon this question. I think there should be a new trial, and, therefore, dissent from the judgment announced by the majority of the Court.