## MARS v. MARS.

1. The powers of agents, general and special, considered and stated.
2. A negotiable note, payable to bearer, or endorsed in blank, is transferrible by delivery, and when thus delivered before its maturity, is indefensible in the hands of the holder.
3. Authority given to an agent by the payee of a draft to transfer the draft, carries with it the authority to endorse; and upon the endorsement of the payee's name by such agent, the purchaser acquires a good title.
4. Where an agent was instructed to apply an endorsed draft of the payee to a particular debt, and he transfers it for value to a *bona fide* purchaser, who is ignorant of such instructions, the purchaser is not liable to the payee for the value of the draft.
5. A draft was payable to A & B, who were joint owners thereof, but not partners. A instructed B to deliver it to W in payment of a certain debt. B endorsed the names of A & B on the draft and delivered it to W to be applied otherwise than as directed, and W so applied it, not

knowing of A's instructions.   *Held*, that W was not accountable to A for the proceeds of the draft.

Before HUDSON, J., Abbeville, October, 1886.

This was an action by Thomas W. Mars against Walter W. Mars and F. W. Wagener & Co., to recover $940.40, proceeds of a draft misapplied by defendants.   The jury rendered a verdict in favor of plaintiff against W. W. Mars for the amount claimed, but they found in favor of the defendants, Wagener & Co.   The opinion sufficiently states the case.

*Mr. Ellis G. Graydon*, for appellant.

*Messrs. Parker & McGowan*, contra.

July 8, 1887.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The plaintiff, appellant, and the defendant, W. W. Mars, were indebted to the respondents on a promissory note for $3,000, which was secured by a mortgage of certain real estate of the appellant, T. W. Mars.   Some time after this the said appellant and the defendant, W. W. Mars, became possessed of a certain draft for $2,108.17, known in the case as the Cisco & Son draft, which was payable to the order of W. W. & T. W. Mars, drawn by G. W. Dillingham, cashier of National Bank of Columbus, Ga.   The plaintiff, appellant, and the defendant were not partners in business, nor did they sustain any other relation to each other which made them agents of each other.   In October, 1880, W. W. Mars went to Charleston, where the respondents resided, and when leaving his home in Abbeville County the appellant delivered to him the Cisco & Son draft, with instructions to apply it to the mortgage debt above to the respondents.   The draft at that time was unindorsed.   W. W. Mars, on reaching Charleston, indorsed it, and instead of crediting the proceeds on the mortgage debt to the respondents, transferred it to said respondents in the purchase of goods and otherwise for his own purposes, with the exception of a small amount, some $227.36, which was credited on the mortgage debt.

The appellant brought the action below to recover his half of

said draft, alleging that W. W. Mars had no right to transfer it as he did. Under the charge of the Circuit Judge the verdict was for the defendants, respondents. The main question below was as to the effect of the transfer of the Cisco & Son draft by W. W. Mars to the respondents. Upon this question his honor charged, in substance, that the authority given by T. W. Mars to W. W. Mars to transfer the draft to the respondents, carried with it the power to indorse it, and that when it was thus indorsed, in the absence of any knowledge on the part of the respondents that it was indorsed for a particular purpose, it became a general indorsement, authorizing its transfer for any purpose; or rather, when thus indorsed, the respondents could safely take it, free from accountability to the true owner, said respondents having no knowledge that W. W. Mars, the agent, was violating his instructions. The correctness of this charge is the principal question in the appeal.

There are two classes of agents, general and special, and their powers, when properly analyzed, are governed by the same general principle, to wit: they can do anything within the scope of their agency so as to bind the principal, notwithstanding there may be some secret instructions limiting the powers. A general agent has a wider and broader scope than the special, it is true, but each within his scope can do anything necessary to consummate the object of the agency, so far as third parties are concerned, unless there be a special limitation brought home to such third parties. Under this principle an agent, general or special, in the possession of an ordinary chattel, may deal with it as to third parties to the full extent of the scope of his agency (in the absence of any known limitation), and his action will bind his principal, although against private instructions; but if he steps beyond that scope, his act is illegal and invalid. So that in ordinary agencies, and with reference to ordinary goods and chattels, a third party dealing with an agent deals with him at the peril of showing that the act done was within the scope of the powers of the agent. See the case of *Carmichael* v. *Buck*, 10 *Rich.*, 332, 70 *A. D.*, 226.

This doctrine does not apply, however, to the full extent herein above, to the transactions of an agent entrusted with com-

mercial papers, negotiable notes,, drafts, &c., &c. In the interest of commerce and trade, such papers have long been governed and controlled by principles of their own, which apply wherever they are made the subject or the instruments of a transaction. One of these principles is, that a negotiable note, when payable to bearer, or when payable to the order of another, and has been indorsed by that other, is transferrible by delivery, and if thus delivered before due, it is indefensible in the hands of the holder. Under this principle, if the draft in question here had been indorsed by T. W. & W. W. Mars, the plaintiff, of course, would have had no cause of action to recover the proceeds from the respondents. It is said, however, that the plaintiff, appellant, did not indorse it. That is true, to the extent that he did not do so personally and by his own individual act, but the maxim is,·*qui facit per alium, facit per se.* We think that the Circuit Judge properly charged that the authority to W. W. Mars to transfer the draft to the respondents necessarily carried with it the power to indorse it in the name of T. W. & W. W. Mars, because there was no other way by which it could have been legally transferred, except by such indorsement. The indorsement, then, was as much the act of the appellant as if he had personally written the · indorsement himself.

W. W. Mars, when he went to Charleston, was charged by T. W. Mars with two duties or powers, first, to indorse the draft, second, to deliver it to the respondents in payment of the mortgage debt after it was indorsed. The second duty he violated, but the first he performed, and performed it with authority, which bound his principal. When this was performed the negotiability of the draft, which quality the indorsement gave it, intervened, and at once relieved the respondents from the necessity of looking into the purpose of the indorsement. He found it a negotiable paper, and under the commercial law was well warranted in taking it for whatever the then holder chose to dispose of it. He was under no obligation to inquire what the holder intended to do with it; or what he could do with it. It was in a condition to be passed from hand to hand, and placed so by the act of the proper parties apparently. The only peril he was under was whether the indorsement was in fact made by the pro-

per parties. This was his only risk. All this, it is true, is based upon the assumption that respondents had no knowledge of the instructions given to W. W. by T. W. Mars, limiting his power of transfer, which it seems the Circuit Judge explained in his charge.

We conclude, then, that there was no error in the charge of his honor as to this main point in the case. We think that the cases of *Cone* v. *Brown*, 15 *Rich.*, 262, and *Diercks* v. *Roberts.* 13 *S. C.*, 338, are conclusive of this question.

All of the plaintiff's requests to charge, and the refusals of which are made grounds of exceptions, are met by the position that W. W. Mars had authority to indorse the draft. It was not denied that he was authorized to transfer; it then followed that he was authorized to indorse, as a legal conclusion. Such being the fact, W. W. Mars did not exceed his powers as to said indorsement; he only exceeded them after said indorsement, when he made an unauthorized use of the draft. The only question of interest in the matter, then, to the respondents was, did W. W. Mars have the power to indorse, and of this no doubt it would have been safe and well for him to inquire; but if he was willing to take the draft, running the risk of W. W. Mars having no such power, no one else could complain. If it had turned out that W. W. Mars had been invested with no such power, then the respondents would have been compelled to refund.

The substance of his honor's charge, when taken as a whole, including his response to requests on both sides, was, that if W. W. Mars, when he went to Charleston with the draft in his hands, had authority to transfer it to the respondents, he had the power to indorse it, and that after being indorsed, unless the respondents were informed of the special instructions given to W. W. Mars, as to the use to be made of it, said respondents could take it safely and without accountability. The questions involved in this we have discussed, and we think our conclusion has disposed of all other questions raised in the exceptions of appellant. We deem it unnecessary, therefore, to take up these exceptions *seriatim*.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, as there is no appeal as to W. W. Mars.