## 11949

### LAND v. REESE *ET AL.*

#### (134 S. E., 253)

1. PRINCIPAL AND AGENT.—Attorney lending money for another, under agreement to pay interest on all funds in his hands, *held* general agent of lender, as respects authority to receive mortgage payments.

2. EVIDENCE.—Declarations of general agent of lender at time of making loan *held* admissible as *res gestae,* and binding on lender.

3. PRINCIPAL AND AGENT.—Declaration of general agent for lender that payments to him before maturity would be credited *held* binding on lender, precluding his subsequently contesting payments.

4. ESTOPPEL.—Where one of two innocent persons will suffer for wrongful act of third, one who was most at fault in letting it be brought about will be required to bear loss.

5. PRINCIPAL AND AGENT.—Lender holding attorney out as agent to invest money will be required to bear loss resulting from payment on principal to attorney.

#### On Petition for Rehearing

6. PRINCIPAL AND AGENT.—Borrowers *held* entitled to credit for payments on principal to agent of lender.

7. PRINCIPAL AND AGENT.—If mortgagee's agent had authority to collect principal on mortgage debt, it is immaterial who had possession of papers.

NOTE: On effect of fact that agent does not have possession of securities upon question of his authority to receive payment, see notes in 23 L. R. A. (N. S.), 414; L. R. A., 1916-B, 860.

Payment to one found at place of payment designated, who was not in possession of securities, see note in 21 L. R. A. (N. S.), 52; L. R. A., 1916-B, 862; 21 R. C. L., pp. 19-21; 3 R. C. L., p. 1132.

Before MEMMINGER, J., Richland, Fall Term, 1924. Affirmed.

Action by J. S. Land against Isaac Reese and others as trustees of the Union Baptist Church of Columbia, and another. Decree for defendants and plaintiff appeals.

J. C. Townsend, Master for Richland County, submitted the following report:

"(1) Pursuant to the order of reference set out in the attached testimony, I held references herein, attended by the attorneys of record, took the testimony offered, which is herewith reported, and therefrom find and conclude as hereinafter set forth.

"(2) I find that the plaintiff, J. S. Land, did, on or about the 7th day of July, 1919, deliver his check, dated on said date, payable to the order of Barron, McKay, Frierson & Moffatt, in the sum of $3,000, for the purpose of a loan which was subsequently made, and now constitutes the subject-matter of this action.

"(3) I further find that, pursuant to resolution made and passed by the constitute authorities of the Union Baptist Church of Columbia, S. C., passed at a regular monthly meeting on the 13th day of June, 1919, to borrow the sum of $3,000, and to secure the payment thereof by bond and mortgage covering the premises situate on Divine street between Assembly and Gates streets, in the City of Columbia, all of which said description of said premises more fully appear in the pleadings in this action.

"(4) I further find that, pursuant to resolution, Charles Smith, Sam Smith, Dallas Robinson, and Joseph Wilson, made, executed, and delivered, as trustees, their certain bond or obligation, conditioned for the payment, 'Unto the above-named, J. S. Land, his certain attorneys, executors, administrators, or assigns, the full and just sum of three thousand ($3,000.00) dollars three years after the date thereof, with interest thereon from date and until paid in full, at the rate

of eight (8%) per cent. per annum, payable semiannually on the 1st days of January and July of each and every year, and in default of the payment of any installment of interest, the entire amount of said principal indebtedness, together with interest thereon, shall, at the option of the mortgagee, become immediately due and payable."

"(5) I further find that, in order to better secure the payment of said bond according to the terms and conditions thereof, and pursuant to said resolution, the parties executing said bond executed and delivered their certain mortgage, and by way thereof did convey unto J. S. Land, his heirs and assigns, the parcel of land more fully set forth and described in said mortgage, which said mortgage was filed for record, and the same was duly recorded in the office of the clerk of Court for Richland County in Mortgage Book CX, at page 312.

"(6) I further find that said bond, together with the mortgage, at the time of the execution, or immediately thereafter, was delivered to some one for and on behalf of the law firm of Barron, McKay, Frierson & Moffatt.

"(7) I further find that said bond is without date, and so is the mortgage, but in the recitation clause of the mortgage it is stated that said bond is dated the 3d day of July, 1919, and that said mortgage is even without date of its probate, but was filed for record on the 5th day of July, 1919.

"(8) I further find that, after the execution and delivery of said bond and mortgage, the amount therein stipulated was paid out by the firm of Barron, McKay, Frierson & Moffatt, in installments, and of dates, together with other charges against said fund, according to the following statement:

"Loan, J. S. Land to Union Baptist Church of
Columbia, S. C.

Amount of Loan.......................... $3,000.00

### Disbursements.

| | |
|---|---:|
| Attorney's fees | $ 60.00 |
| 1919 | |
| July 5, by check | 500.00 |
| July 17, recording mortgage | 4.00 |
| Revenue stamp on bond | 1.50 |
| By check | 500.00 |
| July 25, by check | 500.00 |
| August 2, by check | 500.00 |
| August 8, by check | 500.00 |
| August 16, by check | 150.00 |
| August 17, check to balance | 284.50 |

$3,000 00     $3000 00

"Columbia, S. C., December 23, 1919.

"(9) I further find that the interest on account of said loan was paid by the makers thereof or some one for and on behalf of the Union Baptist Church of Columbia, unto the firm of Barron, McKay, Frierson & Moffatt, or to said firm as the name thereof might have been changed from time to time, at all times, however, headed by Barron.

"(10) I further find that on the 4th day of October, 1920, the sum of $1,000 was paid to the firm of Barron, McKay, Frierson & McCants, on account of the principal due on account of said bond and mortgage, and that on the 21st day of June, 1922, the sum of $700 was paid to the firm of Barron, Frierson, McCants & Elliott, on account of loan of the Union Baptist Church of Columbia, from J. S. Land.

"(11) I further find that interest was paid on said loan pursuant to notices addressed to Union Baptist Church of Columbia, signed by the firm of Barron, McKay, etc., among other things in words as follows: 'Interest amounting to one hundred sixteen ($116.00) dollars, on your loan No. 398, from J. S. Land, will be due on January 1, 1920,

please send check payable to our order to cover.' Reference is had to Exhibits J, K, L, etc.

"(12) I further find that interest was paid by Union Baptist Church of Columbia on the balance of said loan, after giving credit for the payments made, up to the 1st day of July, 1922, and that interest on the full amount of the loan, to wit, $3,000, was remitted to the plaintiff, J. S. Land, by the firm of Barron, McKay, etc., up to the 1st of July, 1922.

"(13) I further find that J. S. Land claims the full amount of said bond and mortgage, to wit, $3,000, together with interest from the 1st day of July, 1922, and attorney's fees, is now due thereon, and that the defendant Union Baptist Church of Columbia claims that there is only due the sum of $1,300 principal, with interest thereon from the 1st day of July, 1922; the controversy being over the two payments made on account of the principal, to wit, $1,000 October 4, 1920, and $700 on June 21, 1922.

"(14) I further find that, soon after the execution and delivery of the bond and the recording of the mortgage, the same, together with the policy of insurance, was forwarded to J. S. Land, and he retained the possession thereof until the institution of this action.

"(15) I find that Barron's firm were general attorneys for J. S. Land for the purpose of making loans for the plaintiff, but that no specific authority was delegated by the plaintiff, J. S. Land, to said attorneys to even collect the interest, and at no time was any authority given by J. S. Land for said firm to collect the principal of the loan in question or any other loans made by said firm on behalf of the plaintiff. I find also that no authority was given to change the terms of the contract contained in the bond and mortgage to accept any part before maturity, and that any collections so made were without authority either expressed or implied in so

far as the same specifically relates to any collections on the bond and mortgage, the subject of this action.

"(16) I report as a matter of law that any payments on account of the principal of the bond and mortgage in question to an alleged agent is made at the peril of the payer; that the bond and mortgage executed directly to J. S. Land; that it was the duty of the makers thereof to make payments to him unless specifically authorized by J. S. Land to make payments to some third person. *Mars v. Mars,* 27 S. C., 134; 3 S. E., 60.

"(17) I further report that the defendants should not have made any payments on account of the principal of said bond and mortgage, especially before maturity, without requiring the production of said bond and mortgage and the payments credited thereon; the requiring of the production of said bond and mortgage to establish the ownership thereof. *Williams v. Paysinger,* 15 S. C., 571. *Talbert v. Talbert,* 97 S. C., 146; 81 S. E., 644.

"(18) According to the foregoing findings of fact and conclusions of law, I have calculated the amount due on said bond and mortgage and find that there is due thereon to the date of this report, to wit, the 27th day of May, 1924, is the sum of $3,658, including principal interest, and attorney's fees, all according to the following statement:

Principal ............................ $3,000.000
Interest from July 1, 1922, to May 27, 1924, at 8
  per cent................................ 458.00
Attorney's fees.............................. 200.00
_____
$3,658.00

"(19) I further find that the sum of $200 is a very reasonable fee to be allowed the attorneys for the plaintiff for services rendered and to be rendered herein until the final adjudication of this action.

"(20) I further find that the lien of said mortgage is and constitutes a first and prior lien covering the premises as therein described and as set forth in the complaint in this action.

"(21) I would therefore recommend that the plaintiff have judgment against the defendant for the $3,658, with interest thereon from the 27th day of May, 1924, and that, upon failure to pay or make adjustment of the same on or before 90 days from the date of any final decree herein, the said mortgage be foreclosed according to law in such cases made and provided."

Following is the decree of Memminger, Circuit Judge:

This is an action for foreclosure of a mortgage given by authorized officers of a negro Baptist Church, of Columbia, to J. S. Land, money lender, through the law firm of Barron, McKay, Frierson & Moffatt, of Columbia.

"The negroes paid interest to the law firm, and, pursuant to an agreement with the law firm made at the time of the execution and delivery of the mortgage, paid before maturity on account of the principal two payments amounting to $1,700. Barron had put bond and mortgage in the possession of Land, and the negroes did not call for the production of the originals when they made their payments, but got Barron's receipts for the payments. The mortgage shows on its face that it was executed by ignorant people on behalf of a negro church. Of course, the face of the mortgage shows that it was made to Land, but it is not probable that the negroes knew this, and no doubt believed they were dealing with Barron.

"Barron died, and Land never received the payments, which had been made on the principal. He forecloses for the whole amount. The master finds for Land, and declines the credits set up in the answer.

"Exceptions are taken, and a request made for permission on behalf of defendants, to take further testimony along

the line that the firm of Barron were absolute general agents of Land, and that payment to the firm was payment to Land. I granted this, and testimony was taken and reported, and the whole matter was presented before me for decision.

"Upon first impression, I was inclined to make the usual decision in cases where a loan is negotiated through a lawyer, authorized to draw up the papers and collect interest, that a payment on the principal by the borrower to the lawyer would not bind the lender; however, after a careful study of the whole record, I find that the case differs materially from the ordinary case of such transaction.

"I cannot but conclude that Barron was the general agent of Land for investing his money, and actually collecting principal and interest and reinvesting it as he saw fit, and it was a mere matter of form that the papers were made out to Land and put in his possession. Land had an agreement with Barron that Barron was to pay him interest on all funds of Land's in his hands, whether loaned out or not, and, in a number of cases appearing in the testimony, Barron did collect principal for Land and remitted it to him and then procured satisfaction for the borrower. Barron thus being the general agent for Land, under *Knight v. Jackson,* 36 S. C., 10; 14 S. E., 982, his declarations at the time of execution of the papers were part of the *res gestæ,* admissible as evidence and binding upon Land. It is obvious that the declaration of Barron that payment on principal before maturity would be credited was binding on Land, and Land put Barron in a position to thus deceive these ignorant negroes, and should not now be heard to contest. Barron naturally was interested in getting the loan paid up as soon as possible and lending the money out again, and getting another fee from a new borrower. It made no difference to Land, because, under his agreement with Barron, he was to get interest on his money whether Barron loaned it out or not.

"Upon another ground, also I am satisfied that the exceptions to the master's report are well taken, and that the defendants are entitled to have the payments of principal credited upon the debt; that is, under the general principal that, where one of two innocent persons must suffer by the wrongful act of a third, he will be required to bear the loss who was most at fault in letting it be brought about.

"Measured by this rule, it seems to be apparent that the loss should be upon Land. The only fault that can be put upon the negroes is that they trusted the statement of Barron, clothed, or apparently clothed, with power, to conduct the whole transaction, and actually conducting it, and not requiring from Barron the production of papers when the payments were made. This is insignificant, to my mind, as compared to the negligence of Land in holding Baron out as his agent to invest his money, to collect interest, in some cases to collect principal, to do nothing more than have the papers made payable to him and delivered to him. These special papers showed the loan was to a negro church; he would know they were usually ignorant and easily deceived. He could have easily notified them to make payments only to him. On the contrary, he gave the Barron firm a full swing in investing and reinvesting his money. He took no care at all in protecting innocent persons conducting transaction with Barron, and he himself was all the while protected by his agreement with Barron for investment on his funds.

"No argument should be drawn from a knowledge which comes after the fact, and upon that idea it may be reasoned that Land had absolute confidence in Barron; but the testimony in this case shows that he seemed anxious to get money out of the hands of Barron when it was paid in to his credit. He had become apprehensive—he should have warned these people, and not waited and caused them a

loss 'after the Deluge,' as a decision now in his favor would entail.

"Let a formal decree be prepared carrying out the views herein expressed on the footing of this decree and as a part hereof; and it is so ordered, adjudge and decreed."

*Messrs. Moorman & Moorman,* for appellant, cite: *Parol evidence rule:* 121 S. E., 561; 121 S. C·, 440; 120 S. C., 375; 120 S. C., 211; 112 S. C., 343; 104 S. C., 451; 63 S. C., 406; 24 S. C., 124; 13 S. C., 188; 12 S. C. L., 21; 1 S. C. L., 406. *Case distinguished:* 36 S. C., 10. *Promises on past consideration void:* 1 McC., 514. *Party not misled by facts unknown to him:* 17 A. S. R., 645. *Party dealing with agent must show facts giving color to agency were known to him at time of dealing:* 7 L· R. A. (N. S.), 752; 21 R. C. L., 856. *Party dealing with agent must prove agency:* 27 S. C., 134; Meechem on Agency, Secs., 743, 744 and 745. *Burden of proof on debtor to show evidence of indebtedness was in hands of agent at time of payment or prove agency to receive payment:* 21 R. C. L., 868. *Authority to collect interest not authority to collect principal:* 30 Pa. Sup. Ct., 401; 23 L. R. A. (N. S·), 418; 21 R. C. L., 869; 31 Cyc., 1397. *Agency to make loans not agency to collect interest or principal:* 116 S. C., 446; 23 L. R. A. (N. S.), 419; 31 Cyc., 1397; 2 R. C. L., 993. *On paying mortgage debt to agent debtor should require production of papers:* 97 S. C., 146; 15 S. C., 171; 120 N. Y., 274. *Party signing contract deemed to have read it:* 120 S. C., 226; 127 S. E., 270. *Acts of agent fradulent as against principal not binding on principal:* 127 S. E., 562; 125 S. E., 33. *Cited generally:* 128 S. C., 417.

*Messrs. Cole L. Blease, C. T. Graydon* and *D. T. Faulkenbury,* for respondents.

April 6, 1926. On petition for rehearing August 17, 1926.

The opinion of the Court was delivered by Mr. Justice Watts.

The decree of Judge Memminger is satisfactory to us, and it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

Affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. CHIEF JUSTICE GARY did not participate.

### ON PETITION FOR REHEARING

Mr. Justice Blease: While I concur with practically all the legal positions taken by Mr. Justice Cothran in his able opinion, favoring a rehearing of this cause, still I cannot agree with the disposition he would make of the cause.

As I see it, there is but one question in the whole case to be decided. If Barron's firm was the agent of the plaintiff for the purpose of receiving and receipting for principal payments on the mortgage debt, and if that fact was shown by competent testimony, then the defendants are entitled to credit for such payments on the principal as they made. If Barron or his firm did not have such authority, then it follows the defendants are not entitled to the credits. Barron being dead, it is easy, of course, for his former clients to repudiate his agency. It is absolutely necessary for those who have suffered, or may suffer, because of his acts, or because of the conduct of his clients, to resort to circumstantial evidence to establish the agency of Barron. In my opinion, there was sufficient evidence in the cause to convince the Circuit Judge that Barron, or his firm, was the agent of the plaintiff. It appears to me further that, in his finding of fact, the Circuit Judge has been able to mete out substantial justice.

I do not mean by the position I take in this particular cause that I am expressing an opinion as to the rights of others who may hereafter come to this Court because of the "back-wash" of the debacle of the Carolina Bond & Mortgage Company. I am willing to be guided by

the law as laid down by Mr. Justice Cothran, when the time comes to pass upon other causes, but I shall not forget the legal principle, which I believe is as strong as any stated by the learned justice, to wit: That one must be bound, and should be bound, by the acts and conduct of his duly authorized agent. I think, regardless of all presumptions, that, if it is established that a person had authority to collect principal on a mortgage debt for the holder of the mortgage, it matters not who had possession of the papers. The agency to collect the principal is the question. That agency is a question of fact, depending upon the proof in the case.

The petition for a rehearing is denied.   .

MESSRS. JUSTICES WATTS and STABLER concur.

MR. JUSTICE COTHRAN (dissenting). A reconsideration of this appeal, induced by the petition herein, has convinced me that the master was right in his conclusions, that the Circuit Judge was wrong, and that the petition therefore should be granted. My concurrence in the opinion of Mr. Justice Watts, affirming the decree of Judge Memminger for the reasons stated by him, is withdrawn, and, in the event of a dismissal of the petition, let this opinion appear as a dissenting opinion to the judgment of this Court.            .

I have adopted this course for the additional reason that the great debacle which overtook the Carolina Bond & Mortgage Company, of which C. H. Barron was president, has overwhelmed in its "back-wash" numberless innocent persons, whose rights will doubtless be sooner or later before this Court for adjudication, and it is becoming that as clear a statement of the law as possible be made for future guidance.

The undisputed facts connected with the present controversy are as follows:

Beginning as far back as 1911, the law firm with which Charles H. Barron was connected, in the City of Columbia, acted as the agents or attorneys for the plaintiff, J. S. Land,

in the matter of negotiating loans upon real estate mortgages
for him. The notes and mortgages were invariably taken in
the name of Land and delivered to him after the mortgages
had been recorded; they were at all times thereafter in his
posssession. The firm guaranteed to Land the payment of all
interest upon loans negotiated for him by them, and at the.
interest periods collected the interest and remitted it to Land.
They were not specifically authorized to collect the principal
or any part of it, although in three or four instances cited
they did collect the principals upon loans as they fell due,
and accounted to Land therefor, either by paying him the
cash, or by turning over to him new securities. In each
instance Land required a prompt accounting.

On or about July 1, 1919 (neither the note nor the mort-
gage is dated, but it is conceded that the transaction occurred
about this time), the defendants, trustees of the Union
Baptist Church (colored), in the City of Columbia, applied
to Barron for a loan of $3,000. Land was notified by
Barron of the application, and agreed to make the loan. Ac-
cordingly a bond and mortgage were executed by the defend-
ants, payable to Land, admittedly by the answer to have been
dated July 3, 1919, for $3,000, payable June 3, 1922, with
interest payable semiannually at 8 per cent., and a reason-
able attorney's fee. The papers were prepared in Barron's
office; the money paid to the defendants by the checks of
the firm; the mortgage was recorded; and it, with the bond
and insurance policy, was delivered by Barron to Land, who
has since held all of them in his possession. On the
semiannual periods thereafter, and until Barron's death in
November, 1922, the firm regularly remitted to Land the
accrued interest. On October 4, 1920, the defendants claim
to have paid Barron the sum of $1,000 upon the debt,
and on June 21, 1922, $700. No part of these payments
was remitted by Barron to Land, although he continued at
the periods of January 1, 1921, July 1, 1921, January 1,

1922, and July 1, 1922, to remit to Land the semiannual interest on $3,000 at 8 per cent., $120, as if no payments in the meantime had been made by the defendants. Land knew nothing of these payments, and, as stated, received no part of them.

On April 28, 1923, after the death of Barron, Land instituted this action for the foreclosure of his mortgage, claiming that no part of the debt had been paid·except the interest up to July 1, 1922. The defendants answered the complaint, which was in the usual form, admitting the main allegations thereof, but contending that they were entitled to credit upon the debt for the $1,000 paid on October 4, 1920, and the $700 paid on June 21, 1922.

The case was referred to J. C. Townsend, Esq., master of Richland County, who filed his report, dated May 26, 1924, sustaining the contention of the plaintiff, and recommending foreclosure for the full full amount claimed, $3,000, with interest from July 1, 1922, aggregating $3,658 as of May 27, 1924, with $200 attorney's fees.

To this report the defendants filed exceptions. The matter came on to be heard before his Honor, Judge Memminger, in the latter part of the year 1924, and he later filed a decree, dated January 19, 1925, reversing the report of the master, and sustaining the contention of the defendants, and decreeing foreclosure for $1,300, with interest to February 6, 1925, aggregating $1,570.34 and $50 attorney's fees.

From this decree the plaintiff has appealed upon exceptions which fairly raise the questions hereinafter considered.

The principal ground upon which I base my opinion that the petition for a rehearing should be granted is that the payments claimed as credits were made to Barron's firm before the maturity of the bond and mortgage, and that there is not a particle of evidence tending to show that he was either expressly or impliedly authorized to receive them; considerations to which I respectfully submit the Court in its opinion of affirmance have been inadvertent.

Counsel for the defendants appear to have fully appreciated this difficulty, for upon the reference before the master they offered parol testimony tending to show that, at the time the negotiations were closed with Barron, it was agreed that, at any time before the debt matured, the defendants should have the privilege of making such payments upon the principal as they desired, thus reducing it and lessening the interest. The plaintiff objected to this testimony on the ground, among others, that it tended to vary the terms of the written instruments. The master held that no authority had been "given to change the terms of the contract contained in the bond and mortgage to accept any part before maturity, and that any collections so made were without authority, either expressed or implied, in so far as the same specifically relates to any collections on the bond and mortgage, the subject of the action." This ruling was excepted to by the defendants.

The Circuit Judge, in his decree, holds:

"The negroes paid interest to the law firm, and, pursuant to an agreement with the law firm, made at the time of the execution and delivery of the mortgage, paid before maturity, on account of the principal, two payments amounting to $1,700."

This conclusion was reached upon a consideration of parol evidence contained in the testimony of Charlie Smith, one of the trustees of the church who signed the bond and mortgage, to this effect, that, at the time of the execution of the papers, Mr. Barron agreed that "he would accept any amount on the principal, whenever we were able to raise it, that it would make it easier on us not having so much interest, and we did so"; in the testimony of Joe Wilson, another trustee, "I think we were to pay him $1,000 a year, something like that"; and in the testimony of Dallas Robinson, another trustee, "As we paid on the principal, the inter-

est would be reduced, * * * that you (we) could pay it back to him along, and reduce the interest."

The papers contained no such agreement; the bond was payable at a fixed time, three years after date, maturing July 3, 1922. The payments were made October 4, 1920, and June 21, 1922. The plaintiff entered objection to this testimony upon the ground that it tended to vary the terms of the bond in a material particular.

There being no other direct evidence in the case tending to establish the contractual right of the defendants to anticipate payment of the principal or any part of it, and the reciprocal obligation on the mortgagee to accept such payment, it is manifest that, if this testimony be held inadmissible under the "parol evidence rule," the appeal will turn upon the question whether there is any evidence in the case tending to establish implied authority on the part of Barron's firm to accept the payments, or estoppel on the part of the plaintiff to deny such authority.

In orderly fashion, therefore, it appears appropriate to consider, first, the admissibility of the parol evidence; and, if the conclusion should be adverse to its admissibility, the further questions of implied authority and estoppel.

The "parol evidence rule" is:

"Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a written instrument." *Lagrone v. Timmerman,* 46 S. C., 372; 24 S. E., 290, and 100 other authorities that might be cited.

In *Knighton v. Desportes Mercantile Co.,* 119 S. C., 340; 112 S. E., 343, it is said:

"The rule of necessity applies to the essential elements of the agreement which the parties intended to crytalize in the writing, it does not extend to the formal, nonessential features of the contract writing, nor to independent agreements which do not contradict, vary, or add to the contract, and which are not inconsistent with it."

Every term of the contract which is material, essential, is under the protection of the rule. It rarely happens that the obligee will decline an offer of fulfillment by the obligor pending the maturity of the paper. Circumstances, however, may be such as to make it to his interest to do so, as for instance the difficulty of reinvestment and the consequent loss of interest; but, whether it be to his advantage or not, even though moved by whim, fancy, a disobliging disposition, or what not, he has unquestionably the right to stand upon the "nomination" in the bond. If the obligor has the right to prove by parol a collateral agreement allowing anticipation, I can see no valid reason for denying to the obligee a reciprocal agreement compelling anticipation. I apprehend that it will not be contended that the latter right could exist, in the face of the express terms of the writing.

The maturity of a bond or note is necessarily a material term of the contract. By it the obligor is secure from pressure during the pendency of the immaturity; and at the same time the obligee, reciprocally, is free from the obligation to prematurely accept performance. In other words, the obligor cannot be compelled to pay or perform, and the obligee cannot be compelled to accept payment or performance.

In *Nalitzky v. Williams,* 237 F., 802; 151 C. C. A., 44, the syllabus is:

"Parol evidence is not admissible to vary the unqualified terms of a note by proving an agreement that it might be paid off in installments."

The opinion declares:

"The second defense asserts that, when the note was made, the bank agreed that the debt might be paid off by small installments—$50 or $75—an agreement that would be violated if recovery were now permitted. Evidence to this effect was offered, but was correctly rejected; no authority

need be cited for the proposition that the unqualified terms of the note cannot be thus varied by parol testimony."

In *Crooker v. Hamilton,* 3 Ga. App., 190; 59 S. E., 722, the syllabus by the Court is:

"Parol evidence is inadmissible to vary the terms of payment or the date of the maturity of a promissory note, or to ingraft upon the note a provision for an extension of time."

"The debtor may of course pay the bill or note to any one who is the holder, under an indorsement to him personally, or an indorsement in blank, at any time before maturity, provided the holder consents to receive payment. But if the debtor, from the prospect of some benefit by the rate of exchange, or otherwise, should offer payment before the term arrives, the creditor is not bound to take it, since the term of payment is a condition of the bill or note fixed equally for behoof of both parties." 2 Daniel, Neg. Inst. (5th Ed.), § 1234.

"The maker of a note has no right to pay the same before maturity without the consent of the holder." 8 C. J., 602.

It is axiomatic, that an action cannot be brought upon a note or bond until after maturity, for the reason that the written contract so provides by necessary implication in fixing the maturity. Clearly parol evidence would not be admissible to vary this term of the contract and, if not, the maturity is as binding upon the maker as upon the payee, and the same rule should apply when the maker attempts to change the term.

In *Strachan v. Muxlow,* 24 Wis., 21, it was held, quoting syllabus:

"Where a buyer gave his note payable to a third party or order, an alleged contemporaneous agreement allowing him to pay it before maturity, and stopping the interest, or to pay it to the seller when due, contradicts the note."

In *Doar v. Gibbes,* Bailey Eq., 371, it was held that parol evidence was not admissible to enlarge the time within which the terms of a written agreement for the sale of land were to be complied with.

In *Dierck v. Roberts,* 13 S. C., 338, it was held, quoting syllabus:

"If a note on the face of it, purports to be an absolute engagment to pay money at a certain time, no parol evidence of an agreement at the time to renew and give indulgence will be admissible to defeat the action on the note."

It would appear illogical to hold that parol evidence is inadmissible to extend the maturity and admissible to accelerate it.

In *Thompson v. Ketcham,* 8 Johns. (N. Y.), 189, 5 Am. Dec., 332, it was held that the time of the payment of a note is a part of the contract.

In *Trentman v. Fletcher,* 100 Ind., 105, it was held that a note due at fixed time could not be changed by a verbal agreement that it was to be paid from time to time.

"It is a general principle of law that parol evidence is inadmissible to vary or contradict a written contract. Therefore, if a bill or note be absolute upon its face, no evidence of a verbal agreement made at the same time, qualifying its terms, can be admitted. * * * The principle applies to every element of the instrument." 1 Dan. Neg. Inst. (5th Ed.), §§ 80, 81.

"Neither the mortgagor nor any third person can compel the mortgagee to accept payment of the mortgage debt before it falls due according to the terms of the mortgage, unless the right has been reserved." 27 Cyc., 1389.

In *Oxweld Co. v. Davis,* 115 S. C., 426; 106 S. E., 157, approved in *Colt v. Britt,* 129 S. C., 226; 123 S. E., 845, it was held that, where a written contract provides no specific time for performance, the law implies a reasonable time,

and that parol evidence tending to fix a definite time will not be received.

As to the inadmissibility of parol testimony affecting the declared maturity of a note, see *Nicholas v. Krebs,* 11 Ala., 230. *Joyner v. Turner,* 19 Ark., 690. *Stucksleger v. Smith,* 27 Iowa, 286. *Curran v. Askin,* 7 Ky. Law Rep., 367. *Eaton v. Emerson,* 14 Me., 335. *Currier v. Hale,* 90 Mass., 47. *Wooley v. Cobb,* 165 Mass., 503; 43 N. E., 497. *Thompson v. Ketcham,* 4 Johns. (N. Y.) 285. *Farmers' & Merchants' Bank v. Whinfield,* 24 Wend. (N. Y.), 419. *Terrell v. Walker,* 66 N. C., 244. *Clarke v. Allen,* 132 Pa., 40; 18 A., 1071. *Campbell v. Uphaw,* 26 Tenn., 185; 46 Am. Dec., 75; 43 L. R. A. (note), 456.

I do not think that there is anything in the position taken by the Circuit Judge that, as Barron was the agent of the plaintiff in negotiating the loan, his declaration that the defendants might anticipate payment of the bond should be considered as a part of the *res gestæ.* If Land himself had been drawing the papers, his declaration to that effect contradicting the express terms of the bond, would not have been admissible, and *a fortiori* the declaration of his agent would have been banned.

Next, as to the question whether there is any evidence tending to sustain the consequent burden imposed upon the defendants, of showing that Barron's firm was authorized to collect or receive a partial payment upon the principal of the bond.

The defendants are confronted by two stumbling blocks: (1) The payments were made when the bond and mortgage were both in the possession of the mortgagee; no requirement was made by them when they made the payments that the papers be produced by Barron to whom the payments were made. (2) Both of the payments were made before the bond matured.

As to the payments to a supposed or alleged agent when the papers are in the possession of the mortgagee, the rule appears to be this: Under such circumstances there is no implied authority in the supposed agent to accept a payment; that when a debtor pays to one other than the holder of the papers, who has not possession of it, in order to validate such payment, the burden is upon him to show authority in such person to receive the payment, which of course may be done expressly or by implication.

In *South Branch Lumber Co. v. Littlejohn,* 31 Neb., 606; 48 N. W., 476, the syllabus by the Court is:

"A party who pays money to another to be applied on a note which such person has not in his possession assumes the burden of proof to show the authority of the person to whom payment is made to receive the money."

"Payment of negotiable note secured by mortgage to the original mortgagee not in possession of the note or mortgage, is not binding on assignee before maturity, unless he had authorized such payment." *Scott v. Taylor,* 63 Fla., 612; 58 So., 30.

"Payment of a negotiable note secured by mortgage, to the mortgagee, when not in possession of the note and mortgage, is not binding on an assignee before maturity who had possession of the papers at the time of payment, unless he has expressly or impliedly authorized such payment." *Chase v. Commerce Trust Co.,* 101 Okl., 182; 224 P., 148.

In *Murphy v. Barnard,* 162 Mass., 72; 38 N. E., 29; 44 Am. St. Rep., 340, the syllabus is:

"Payments made to a mortgagee after he has assigned the mortgage are at the peril of the mortgagor, and he is not entitled to be credited therewith, if the mortgagee did not, at the time, produce the original negotiable notes which the mortgage was given to secure, though such notes were in fact in his possession in another city, if he was not

authorized to receive such payment, and it was not induced by the fact of such possession."

"When a mortgagee assigns the mortgage and a negotiable note secured thereby, before maturity, and for a valuable consideration, and the mortgagor, without knowledge of such assignment, pays the mortgage debt to the administrator of the original mortgagee without requiring the production of the note and mortgage, such payment is no defense to foreclosure of the mortgage by the assignee." *Williams v. Keyes,* 90 Mich., 290; 51 N. W., 520; 30 Am. St. Rep., 438.

"Where a note secured by mortgage is assigned by a mortgagee, and payment by the mortgagor, without knowledge of the asssignment is made to one whom he believes to be the agent of the orginal mortgagee, before the mortgage is due, and without production of the note or mortgage by such agent, it is not binding on the assignee of the mortgage, where neither the original mortgagee nor the agent to whom payment is made is shown to be the agent of such assignee." *Dodge v. Berkenfeld,* 20 Mont., 115; 49 P., 590.

The Court said:

"It was a most incautious act for him to pay them the amount of the note not yet due, without demanding of and receiving at their hands the note itself, all on the assumption that they were the agents of the owners of the papers."

"If money be due on a written security, it is the duty of the debtor, if he pays to an agent, to see that the person to whom he pays it is in possession of the security. For, though the money may have been advanced through the medium of the agent, yet, if the security do not remain in his possession, a payment to him will not discharge the debtor." *Smith v. Kidd,* 68 N. Y., 130; 23 Am. Rep., 157.

In *Lane v. Duchac,* 73 Wis., 646; 41 N. W., 962, it was held that, where a mortgagor pays the amount of the debt to one who he knows has not possession of the papers, and

who undertakes merely to procure a release from the mortgagee, the mortgagor assumes the risks of the release being procured in that manner.

"A mortgagor who pays interest or principal upon a mortgage to any one other than the mortgagee himself, when the person receiving such payment has not in his possession the obligation, does so at his peril. In order to hold the principal to such payment he must prove express authority." *Crane v. Evans,* 2 How. Prac. (N. S) (N. Y.), 310.

"Payment to the original holder of a negotiable note, secured by a mortgage, of the amount due, is at the risk of the one making it, unless it is authorized by the true owner or justified by possession of the securities." *Koen v. Miller,* 105 Ark., 152; 150 S. W., 411.

"Where mortgagors paid the principal and interest to the broker who negotiated the loan, and the broker has no express authority to receive payment, and did not have the mortgage note or mortgage in his possession when the payment was made, such a payment did not operate as a satisfaction of the mortgage; the broker having no implied authority to receive payment." *Thacker v. Medburg,* 33 R. I., 37; 80 A., 186.

"Where a debtor owing money on a written instrument pays another as creditor's agent, it is debtor's duty at his peril to see that the one paid is in the possession of the obligation, or, if not so in possesssion, debtor must show that the person to whom he pays has special authority to receive payment." *Sioux City Co. v. Lovrien,* 198 Iowa, 296; 197 N. W., 914.

"The lack of possession of a note and mortgage is sufficient to put the debtor on inquiry as to the authority of the alleged agent to receive payment." *Pioneer Co. v. Randall,* 113 Kan., 62; 213 P., 668.

"Where the assignee of a note and mortgage permits the original mortgagee, without intrusting him with the note,

to collect the interest as agent, and the mortgagor, ignorant of the assignment, pays the agent both principal and interest without compelling a production of the instruments, he is not entitled to a cancellation." *Biggerstaff v. Marston*, 161 Mass., 101; 36 N. E., 785.

"It is the duty of a person paying a note or bond secured by mortgage to require the production and cancellation of these instruments as a condition of payment, and a payment without requiring the production and cancellation of these instruments is at the risk of the person making the same. In order that such payment be effectual, the burden is on him to show that he paid the true owner or his agent having express or implied authority to receive the payment." *Assets Realization Co., v. Clark*, 205 N .Y., 105; 98 N. E., 457; 41 L. R. A. (N. S.), 462, note.

In *Hoffmaster v. Black*, 78 Ohio St., 1; 84 N. E., 423, 21 L. R. A. (N. S.), 52; 125 Am. St. Rep., 679; 14 Ann. Cas., 877, it is pertinently said:

"When the defendants made payments to Hood [the alleged agent] without requiring the production of the securities, it was no more than if they had intrusted such payment to a messenger boy. That which reached the plaintiff was good payment. That which did not reach the plaintiff was at their own risk."

In *Tappan v. Morseman*, 18 Iowa, 499, in an opinion by Judge Dillon, it is said:

"If a debtor, owing money on a written security, pays to or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with is in possession of the security. If not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, or has been represented by the creditor to have such authority, although for some reason not in possession of the security."

In *Biggerstaff v. Marston,* 161 Mass., 101; 36 N. E., 785, it is held that:

"Where the assignee of a note and mortgage permits the original mortgagee, without intrusting him with the note, to collect the interest as agent, and the mortgagor, ignorant of the assignment, pays the agent both principal and interest without compelling a production of the instruments, he is not entitled to a cancellation."

"Payment of a mortgage debt to the broker who negotiated the loan, after he had parted with possession of the notes and mortgage, does not relieve the mortgagor from liability thereon, and it is wholly immaterial that the owner of the mortgage has other transactions with the broker and has money deposited with him." *Viskocil v. Doktor,* 27 Ill. App., 232.

"Payment of the principal of a mortgage to one who assumed to be, but was not, the mortgagee's agent, and had not possession of the security, is not a discharge of the bond and mortgage, although interest on that and other mortgages had in several cases been paid through him." *Cox v. Cutter,* 28 N. J. Eq., 13.

It is held by some authorities that the mere fact that the supposed agent is not in possession of the securities when the payment is made is conclusive upon the defense of payment made by the debtor, but the better rule is that the fact is one to be submitted to the triers of fact, as a circumstance against the authority of the supposed agent; the burden being on the debtor to establish the authorization.

If the payments had been made at or after the maturity of the bond, under the facts of this case, the defense would have been much stronger. The evidence shows, and the plaintiff admits, that upon at least three occasions Barron collected the principals of the mortgages and so notified him in each instance; that he insisted upon a prompt accounting by Barron, and, when either the money was turned over to

him or new loans made, he marked the mortgages satisfied of record, without repudiating or even criticizing the action of Barron and without notifying the debtors that he was not authorized so to do.

This evidences a course of dealing between Barron and Land from which the inference could reasonably be drawn that as a matter of fact Barron was authorized to collect the principals upon the mortgages held by Land as they fell due, although they may at the time have been in the possession of Land. It does not appear that the defendants had notice of this course of dealing, and were misled thereby to confide in the supposed authority of Barron. If they did not, the question whether they can take advantage of a course of dealing of which they had no knowledge may be passed over for the present, in view of the following consideration which is conclusive against the defendants: The payments were made before the bond was due, and the authorities are unanimous in holding that express authority must be shown. The fact that the mortgagee may have allowed the agent to collect the principals of mortgages at or after maturity is no evidence of authority to collect them before; that is all that the defendants have to rely upon, for there is not a particle of evidence showing express authority on the part of Barron to collect such principals before maturity.

In *Weldon v. Tollman,* 67 F., 986; 15 C. C. A., 138, the Court said:

"The payment in question was made in advance of the maturity of the note to a person who was neither the payee nor indorsee of the note, and who was not at the time in the possession of the paper or of the deed of trust securing the same. The fact that the person to whom the payment was made was named as trustee in a deed executed by the maker of the note to secure the payment thereof, and that he was given power, under certain circumstances, at the request of the holder of the note, to sell the property con-

veyed for the purpose of paying the debt, did not give him
even a colorable authority to collect the note in advance of
maturity; there having been in the meantime no default
which would authorize the holder of the paper to call upon
the trustee to execute the trust. One who makes a payment
under such circumstances to a person who is in fact unau-
thorized to receive payment, and is not even in possession
of the note intended to be paid, does so at his own risk. A
payment of that nature does not operate to extinguish the
obligation on account of which the payment is made, unless
the act is subsequently ratified by the owner and holder of
the obligation."

In *Keohane v. Smith,* 97 Ill., 156, it was held that, where
a note and mortgage were taken as security for a loan by
the mortgagee, and later a third party left with the mort-
gagee funds for investment, and the mortgagee assigned
the note to such person, a payment of the mortgage by the
mortgagor to the mortgagee before the maturity of the note
did not discharge the mortgage as against such assignee.

"Where the payee of two mortgage notes assigned them,
payment to the payee before maturity will not affect the
rights of the assignee." *Hoffacker v. Manufacturers' Nat.
Bank* (Md.), 23 A., 579.

"It is not such care as ordinarily prudent persons observe
in the transaction of business, to pay off a note secured by
mortgage and take a release from the mortgage before its
maturity, without seeing or taking up the note or making
inquiry as to whether the mortgagee is still the holder of
the note." *Mann v. Jummel,* 183 Ill., 523; 56 N. E., 161.

In *Schermerhorn v. Farley,* 58 Hun., 66; 11 N. Y. S., 466,
it was held that, although an agent had possession of the
securities, and was authorized to collect the interest and the
installments of principal as they fell due, payment made by
the mortgagor before the maturity of the mortgage, not re-

mitted to the mortgagee, constituted no defense to a suit for foreclosure.

"An attorney of a mortgagee, having possession of a bond secured by mortgage which permitted its payment by the mortgagor on or after July 1, 1907, upon giving 30 days' notice to the mortgagee of intention to pay, did not have apparent authority, by his possession of the bond, to receive payment thereof in October, 1907, where the debt was not matured by giving the 30 days' notice." *Johnstone v. Burhans,* 68 Misc. Rep., 484; 124 N. Y. S., 465.

"In regard to the $2,400 mortgage, this case presents the further feature, that at the time of the payment the mortgage had still four years to run. No authority to change the terms of the contract can be implied from the fact that it was originally made through the attorney, and there is no evidence in this case of any such authority. Even though an agent have authority to receive payment of an obligation, this does not authorize him to receive it before it is due." *Smith v. Kidd,* 68 N. Y., 150; 23 Am. Rep., 157.

"And even though an agent have authority to receive payment of an obligation, this does not authorize him to receive it before it is due, in the absence of a known usage of trade or course of business in a particular employment or habit of dealing between the parties extending the ordinary reach of the authority." Mecham, Agency (1st Ed.), § 380; Story on Agency, § 98. Greenleaf, Ev. § 65.

"He (agent) is not authorized to receive payment before the obligation is due, or to collect the principal by reason of authority to collect the interest." Tiffany, Agency, § 28.

"An agent having authority to receive payment of a debt has no authority to receive payment before its maturity." *Wynn v. Grant,* 166 N. C., 39; 81 S. E., 949.

"An agent authorized to collect the principal and interest of a loan has no authority to" collect "the principal or interest before it is due, and payment made to him by the

debtor before that time is at the latter's risk." *Park v. Cross,* 76 Minn., 187; 78 N. W., 1107; 77 Am. St. Rep., 630.

"Every person who pays money beforehand pays it at his own risk. The agent could not have claimed the money before it was due to the principal." *Parnther v. Craitskell,* 13 East, 432 (Lord Ellenborrough).

In *Mars v. Mars,* 27 S. C., 132; 3 S. E., 60, the Court said:

"So that in ordinary agencies * * * a third party dealing with an agent deals with him at the peril of showing that the act done was within the scope of the powers of the agent."

In *Williams v. Paysinger,* 15 S. C., 171, the Court said:

" 'On making a payment upon a mortgage, the debtor should always require the production of the note or bond secured by it, otherwise it may turn out that this evidence of the debt has been assigned.' 2 Jones on Mort., § 956. 'Where a recorded mortgage is discharged by a person other than the mortgagee, the person paying the money, and all subsequent purchasers as well, are bound to inquire what authority he had to discharge it, and are chargeable with the notice of such facts as, by proper inquiry, might have been ascertained.' 2 Jones an Mort. § 959. *Sworthout* [*Swarthout*] *v. Curtis,* 5 N. Y., 301 [55 Am. Dec., 345]. Paysinger was not the mortgagee. There was enough to put Sanders on the inquiry, and he must be held to have had notice of everything that due diligence would have discovered."

There are several statements in the Circuit decree which I do not think are borne out by the evidence in the case. For instance, it is said:

"The mortgage shows on the face that it was executed by ignorant people on behalf of a negro church."

I can find no evidence sustaining this statement. Both bond and mortgage were signed by the trustees in their own names; the signatures fall very far short of stamping them as "ignorant people." It is also said:

18—S. C.—136.

"Of course the face of the mortgage shows that it was made to Land, but it is not probable that the negroes knew this, and no doubt believed they were dealing with Barron."

Three of the trustees and the pastor were put upon the stand and not one of them testified that they did not know what appeared on both bond and mortgage, that the loan was being made by Land. The notices and receipts show that the loan was made by Land through Barron's firm.

On October 17, 1919, the trustees were notified of the renewal of a policy of insurance. In the letter it was stated:

"This policy has been delivered to Barron, Frierson & Moffatt, attorneys for Mr. J. S. Land, who holds the mortgage on this property."

On December 15, 1919, Barron's firm notified the trustees of accruing interest "on your loan No. 398 from J. S. Land." On January 2, 1920, Barron's firm receipted to them "in full payment of interest on loan No. 398 from J. S. Land." On July 1, 1920, Barron's firm receipted to the "interest on loan No. 398 from J. S. Land." On December 16, 1920, Barron's firm notified them of accruing interest "on your loan No. 398 from J. S. Land." On January 3, 1921, Barron's firm receipted to them, "in full payment interest on loan No. 398 from J. S. Land." On January 1, 1922, Barron's firm receipted to them for "interest on loan No. 398." On June 21, 1922, Barron's firm receipted to them for $700, "being part of principal in the above loan," Union Baptist Church to J. S. Land.

The payment of $1,000 on October 4, 1920, is far from being satisfactorily established. On that day it appears that Barron's firm received a check for $1,000, and a receipt was issued to the trustees. The signature on the receipt is said to be illegible, and the body of the receipt declares: "Received of Union Baptist Church the sum of one thousand dollars, on account of loan Joseph Wilson to Union Baptist Church." The check furnishes no information as to what

account it was intended to be applied, and not one of the trustees testified upon the subject.

The learned Circuit Judge relies strongly upon the principle that:

"Where one of two innocent persons must suffer by the wrongful act of a third, he will be required to bear the loss who was most at fault in letting it be brought about."

This statement invites a comparison between the conduct of Land and the mortgagors, in reference to the transactions under review, in an effort to determine who was as "most at fault." In my opinion there is not a circumstance which attaches the least blame to the mortgagee. He had every confidence in Barron, a young man, active, energetic, of pleasing address, and of excellent family; a reputation sustained everywhere until the disclosures began to come to light, long after Land's dealings with him began. He intrusted Barron with the investment of his money in real estate mortgages, and confided to him the collection of interest as it fell due, taking care to get possession of the securities and keep them.

It is thoroughly established, particularly by the recent decision of this Court in *Bacot v. S. C. Loan & Trust Co.*, 132 S. C., 340; 127 S. E., 562, that:

"The fact that an agent is authorized to receive installments of interest as they become due on a note or other obligation does not give him implied power to collect the principal."

So that Land cannot be held to have done any wrong by intrusting Barron with the collection of interest on the bond, and in accepting these collections. The mortgagors are assumed to have known that this did not authorize Barron to collect the principal or any part of it. The fact that Barron was permitted in certain instances to collect the principals of certain mortgages as they fall due, as I have endeavored to show, does not imply the authority to collect them before

maturity. Land was under no obligation to notify the mortgagors that the bond was payable to him; the bond showed that. He was not required to notify them that the papers were in his possession; they knew that, as they were notified as early as December, 1919, when notice of the renewal of an insurance policy was given them, that Land "holds the mortgage on this property." He was not required to notify them that the authority of Barron to collect the interest did not extend to the collection of the principal; they are assumed to have known that. He was not required to notify them that Barron had no authority to collect the principal or any part of it before it was due; there was not the slightest evidence to show that Land suspected such intention on Barron's part or that he had ever done so before. In fact it does not appear that Barron induced such anticipated payments, but that the temptation was too great when they were voluntarily offered. If Land did a single thing to bring about the loss to the mortgagors, I have failed to see it.

On the other hand, consider the conduct of the mortgagors. They knew that the bond and mortgage were executed to Land and that they were in his possession. They made no demand for their production. Knowing that Land had them, this knowledge as the Court holds in the *Paysinger case, supra,* was sufficient to put them on the inquiry as to the authority of Barron to receive the payments. The prosecution of this inquiry would have developed either the fact that Barron had no authority to collect the bond in advance, or that Land was willing that he should do so. In either event the mortgagors would have been protected. They made the payments voluntarily; it does not even appear that Barron requested them to do so; certainly it does not appear that Land was instrumental in the matter or even knew of it until after Barron's death. In fact it does appear that Barron deceived him by concealing the fact of such pay-

ments, as is shown by his remittances of interest upon the original debt, semiannually, as if no payments had been made. I think that the rule invoked by the Circuit Judge could well be turned against the mortgagors who without reason, without inducement on the part of Land, made the payments before the maturity of the bond, and thus enabled Barron to perpetrate the fraud.

In a similar case  (*Murphy v. Barnard,* 162 Mass., 72; 38 N. E., 29; 44 Am. St. Rep., 340), the "two innocent persons" doctrine was invoked. The Court said:

"Nor is the case one where, if one of two innocent persons must suffer from the wrongful act of a third, the plaintiff should be relieved from the consequences of his payment to the wrong party. The owner of the note was not the cause of his making the payments, and did not induce him to make them; but he acted solely upon his own supposition that the mortgagee was himself the owner of the note and mortgage."

The defendants here have not even that excuse, for they knew that Land and not Barron was the owner and in possession.

Nowhere is the law more clearly stated than in 1 Jones, Mtg. (6th Ed.), § 964:

"In making payments to an agent, the mortgage debtor should be assured of his continued authority to act for the owner of the mortgage; and such assurance of this as may be derived from his possession of the mortgage note or bond and indorsement thereon of the payment, would be omitted only through great negligence. Authority of an agent to receive interest or principal on a mortgage cannot be inferred from the fact that the agent had collected and paid over to the mortgagee interest on other mortgages. Even authority to collect the interest upon a mortgage does not afford ground for inferring authority to collect the principal, when the agent is not intrusted with the pos-

session of the securities. The mortgagor is bound to know the extent of the agent's authority. If he pays the principal to an agent, he must be prepared to prove express authority. He pays to an agent at his peril. The agent's own declarations as to his agency cannot be accepted. The rule has been generally adhered to in the adjudged cases, that the possession of the securities by the agent is the indispensable evidence of his authority to collect the principal."

The reporter will incorporate in the report of the case the master's report and the decree of his Honor Judge Memminger.

For the foregoing reasons I think that the petition for a rehearing should be granted.

MR. ACTING ASSOCIATE JUSTICE PURDY concurs.